Grant D. Steffen, Petitioner *v.* Board of Directors of South Middletown Township School District, Respondent.

Argued June 10, 1977, before Judges CRUMLISH, JR., KRAMER and BLATT, sitting as a panel of three. Judge KRAMER did not participate in the decision.

*Gerald E. Ruth,* for petitioner.

*Harold E. Sheely,* for respondent.

OPINION BY JUDGE CRUMLISH, JR., October 13, 1977:

This is an appeal by Grant D. Steffen (Steffen), a tenured professional employe, from an order of the Secretary of Education (Secretary) affirming his dismissal by the South Middletown Township School District (School District) for "incompetency" under the

pertinent section of the Public School Code of 1949[1] (Code).

The factual background of this case is important because of the nature of the issues raised by Steffen. Steffen began working in the School District as a teacher of special education in August of 1968. In June of 1972, the superintendent of the School District instituted a uniform evaluation and rating procedure for all professional employes. The School District superintendent, during the summer of 1973, revised the district's special education program for secondary students. Under the former system, Steffen instructed all of the special education students. The new program required that the students be mainstreamed, that is, placed in a regular learning environment with the other students.

In August of 1973, the superintendent notified Steffen that his special education position was abolished due to the paucity of special education students as well as the change in the educational format. Steffen was offered an alternative teaching position in English and Social Studies. Steffen refused that offer and he was suspended because of his rejection of the proffered position. He was placed on a school district waiting list for an opening in his field of certification.

The School District was informed by the Commission of Basic Education that it could not curtail its special education program because Department of Education approval was not obtained. As a result, Steffen was reinstated and taught special education for the entire 1973-74 school year.

Steffen received a satisfactory rating for the 1972-73 school year; an unsatisfactory rating for the first semester of the 1973-74 school year; and a satisfactory

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §1-101 et seq.

rating for the second semester of the 1973-74 school year.

During the first semester of the 1973-74 school year, Steffen taught two world culture courses in addition to four classes of special education, each containing a minimal number of students. Steffen's handling of the world culture classes led to multi-varied complaints from the students and their parents. Visual observation by those individuals rating Steffen's performance indicated that his lessons were poorly prepared, there was little long-range planning, and discipline in the classroom was nonexistent.

In October of 1974, at an open-house program, Steffen complained to visiting parents of his inability to control the students or to motivate and instruct them, and he stated he did not wish to teach the course of world culture. Steffen requested that the parents complain to the administrative staff and request that he be relieved of his teaching assignment in world culture.

Steffen's performance in his special education classes was also observed by two experts in the special education field. They made suggestions to Steffen on how to improve his teaching techniques.

On December 18, 1974, the students in Steffen's world culture class refused to open their textbooks or to engage in any discussion of the lesson because they felt that they were not learning anything. Steffen was relieved of his duties teaching world culture after he had notified his principal of the students' rebellious conduct.

Shortly thereafter, Steffen was suspended with pay by the superintendent pending formal action of the School Board. Steffen received an unsatisfactory rating for the first semester of the 1974-75 school year.

On January 13, 1975, the School Board initiated dismissal proceedings against Steffen under Section

1122 of the Code, 24 P.S. §11-1122. After comprehensive hearings, the School Board voted to terminate Steffen's contract with the School District due to "incompetency." Steffen appealed the ruling and the Secretary upheld the School Board's decision.

This Court must affirm the order of the Secretary unless constitutional rights were violated, there was an abuse of discretion, an error of law was committed, or a necessary finding of fact is unsupported by substantial evidence. *Acitelli v. Westmont Hilltop School District*, 15 Pa. Commonwealth Ct. 214, 325 A.2d 490 (1974).

Section 1122 of the Code provides, in part, as follows:

The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality, incompetency. . . .

In the case of *Horosko v. Mount Pleasant Township School District*, 335 Pa. 369, 374-75, 6 A.2d 866, 869-70 (1939), our Supreme Court supplied a definition for "incompetency." The Court said:

The term 'incompetency' has a 'common and approved usage.' The context does not limit the meaning of the word to lack of substantive knowledge of the subjects to be taught. Common and approved usage give a much wider meaning. For example, in 31 C.J., with reference to a number of supporting decisions, it is defined: 'A relative term without technical meaning. It may be employed as meaning disqualification; inability; incapacity; lack of ability, legal qualifications, or fitness to discharge the required duty.' In Black's Law Dictionary (3rd edition) page 945, and in Bouvier's Law Dictionary, (3rd revision) p. 1528, it is defined as 'Lack of ability or fitness to dis-

charge the required duty.' . . . Webster's New International Dictionary defines it as a 'want of physical, intellectual or moral ability; insufficiency; inadequacy; specif., want of legal qualifications or fitness.' Funk & Wagnalls Standard Dictionary defines it as 'General lack of capacity of fitness, or lack of the special qualities required for a particular purpose.'

The two unsatisfactory ratings given Steffen, along with the voluminous testimony given by Steffen's students, supervisors, superintendent and principal, certainly indicate that there was substantial evidence to support the Secretary's conclusion that Steffen was incompetent and that his acts of commission and omission fell within the purview of "incompetency."

This Court has stated that failure to maintain adequate classroom control is serious enough, without more, to warrant an unsatisfactory rating for a teacher. *English v. North East Board of Education*, 22 Pa. Commonwealth Ct. 240, 348 A.2d 494 (1975). In the instant case, not only was Steffen lacking in the ability to properly instruct and motivate students, but he maintained little or no disciplinary control over them.

Steffen argues that the School Board's dismissal was capricious, arbitrary, biased, and not based on fact or reasoned analysis and, therefore, a violation of due process. We disagree. The Secretary properly concluded that there were no constitutional violations of any of Steffen's rights by the School Board.

Steffen received notice of the hearing, the charges were outlined, and his counsel was afforded ample opportunity to cross-examine the witnesses who testified. Steffen testified on his own behalf. The School Board members exhibited no animosity or prejudice toward Steffen during the course of the hearings and the testimony of the witnesses presented by the School District was restricted to the issues at hand.

Steffen argues that the school solicitor was improperly commingling prosecutorial and judicial functions during the course of the School Board's hearings. The Secretary properly concluded otherwise. This case does not fall within the framework of *English, supra,* where the School Board's solicitor acted in the dual role of judge and prosecutor. Here, the President of the School Board ruled on Steffen's lawyer's motions and objections and the school solicitor merely voiced his own personal objections as the attorney for the School District. The solicitor did not make the final determination on the objections, motions and what testimony was to be admitted into evidence. The President of the School Board made the necessary rulings. Further, the School Board retained separate counsel to represent it during the deliberations and in the decision-making process.

Steffen further contends that the rating system cards used by the School District differed in form from that mandated by Section 1123 of the Code, 24 P.S. §11-1123. We need not discuss this contention in depth because, as we stated in *English, supra,* lack of control in the classroom without more is sufficient to warrant an unsatisfactory rating. The fact that the approved Department of Education rating card was slightly dissimilar to the one used by this School District in evaluating Steffen is inconsequential in this particular instance. The rating card used by the School District was the same for all of its employes and, further, the card had been approved by the Department of Education prior to the second unsatisfactory rating of Steffen. The first unsatisfactory rating was on an approved and the most widely used rating card.

Steffen alleges that a professional employe must receive two *consecutive* unsatisfactory ratings before he or she can be dismissed. Again, we disagree. Stef-

fen posits that the *Thall Appeal,* 410 Pa. 222, 189 A.2d 249 (1963), is controlling on this point. Even if the regulations involved in *Thall* are still in effect, *see Board of School Directors of Centennial School District v. Commonwealth of Pennsylvania and Grant,* 31 Pa. Commonwealth Ct. 307, 376 A.2d 302 (1977), the *Thall* case does not stand for the proposition that a professional employe cannot be dismissed unless there are two *consecutive* unsatisfactory ratings. Upon close reading, *Thall* appears to state that there must be at least two unsatisfactory ratings; the first, obviously, to serve as a warning to the professional employe that improvement in performance is essential. The second unsatisfactory rating indicates that the employe was unable or unwilling to take corrective action, and the quality of his performance continues to be unacceptable. Also, if there is an acceptable rating in between the two unsatisfactory ratings, one can only conclude that the employe cannot or will not maintain the level of performance that is continuously required.[2] The Secretary properly found that there was substantial evidence to support the finding of "incompetency."

Steffen contends that the administration conspired to have him dismissed. However, the record amply indicates it was Steffen's inability to perform his functions as an instructor or educator to the students, his inability to maintain discipline in the classroom and his unwillingness to improve his performance in his

---

[2] Certainly, at some point, the interval between unsatisfactory ratings could be of such duration that the second unsatisfactory rating should not result in dismissal. The Secretary of Education stated in his decision that a three-year interval between unsatisfactory ratings due to inadequate performance, as opposed to improper conduct, would be the longest period after which the second unsatisfactory rating would result in dismissal. We are not required to draw any line by the facts in the present case, for certainly a mere one-year lapse between unsatisfactory ratings is not significant.

fields of certification that led to his discharge, not a conspiracy. The School District made conscientious efforts to placate Steffen and to keep him employed within their structural educational framework.

The Order of the Secretary is affirmed and Steffen's appeal is dismissed.

Judge KRAMER did not participate in the decision in this case. *See* Pa. R.A.P. 3102(d).

ORDER

AND Now, this 13th day of October, 1977, the Order of the Secretary of Education dated July 6, 1976 in the above-captioned matter is hereby affirmed.