In Re: Appeal of Phillip D. Redo From Suspension From Duty as a Police Officer and From Order of Termination as a Police Officer by the Board of Supervisors of West Goshen Township. West Goshen Township, Appellant.

In Re: Appeal of Phillip D. Redo From Suspension From Duty as a Police Officer and From Order of Termination as a Police Officer by the Board of Supervisors of West Goshen Township. Phillip D. Redo, Appellant.

Argued September 29, 1978, before Judges Mencer, Rogers and Craig, sitting as a panel of three.

*Ronald C. Nagle,* with him *Buckley, Nagle & Mc-Quiddy,* for West Goshen Township.

*William S. Hugania,* with him, *Joseph R. Polito, Jr.,* for Phillip D. Redo.

Opinion by Judge Craig, May 8, 1979:

The Police Tenure Act, the popular designation for the Act of June 15, 1951, P.L. 586, 53 P.S. §811 et seq., governs suspensions and dismissals of tenured police officers in Second Class Townships. Section 2 of the Act, 53 P.S. §812, allows the imposition of discipline

for, among other things, "conduct unbecoming an officer," proof of which constitutes just cause for dismissal.

This case comes before us on cross-appeals by Officer Redo and the township from an order of the Court of Common Pleas of Chester County affirming the adjudication of the Board of Supervisors of West Goshen Township that Redo engaged in conduct unbecoming an officer,[1] but modifying the Board's dismissal order to a one-year suspension.

We adopt the findings of fact of the court below, with which the parties have no significant disagreement.[2] The gist of those facts are that Officer Redo, embroiled in marital difficulties, engaged in an altercation at the Eagle Hotel with the hotel's owner, whom Redo suspected of causing or exacerbating his marital problems. West Goshen's chief of police, concerned over the embarrassment created by Redo's imbroglio in a neighboring township, warned him to stay away from that hotel and its owner. His marital difficulties unresolved, Redo several weeks later returned to the hotel anyway and another row with the owner ensued, resulting in an investigation and report filed by the police of the neighboring township. The police chief of West Goshen then filed the charges which culminated in Redo's dismissal by the Board.

Together, the appellants present us with three issues: (1) whether the procedures employed by the township in affording Redo a hearing on his dismissal, through an improper commingling of prosecutorial and adjudicatory functions, denied him due process;

---

[1] The Board and court also sustained a charge of disobedience of a lawful order. We do not find it necessary to discuss that conclusion, because in the factual context of this case, the order amounted to an order not to engage in conduct unbecoming an officer in the future and therefore merely adds support for that charge.

[2] That opinion is reported at 26 Ches. Co. Rep. 12 (1977).

(2) whether the conduct proven legally amounted to conduct unbecoming an officer; (3) whether the lower court acted improperly in modifying the penalty imposed by the township Board.

The due process contention is based upon arguments that: the Police Tenure Act contemplates convening an independent civil service panel to handle all police tenure, appointment and removal questions; the members of the Board exercised their judicial functions while already "thoroughly familiar" with the case; the attorney who advised the Board, because he was also the solicitor for the township's Zoning Hearing Board, was not "independent" of the prosecution; and, the township solicitor, who prosecuted the case before the Board, also helped to prepare the pre-hearing notices of suspension and termination.

Section 4 of the Police Tenure Act, 53 P.S. §814, expressly requires the township Board of Supervisors, as the appointing authority, to take disciplinary action against a policeman and also adjudicate the propriety of its own action if the officer demands a hearing on the charges. In thus being authorized to wear different hats at different stages of a proceeding, the Board functions in a manner akin to the way a number of our state agencies operate under their respective enabling statutes.

Analogous due process cases dealing with adjudications rendered by such state agencies have considered the problem that those kinds of administrative structures can too easily encroach on the impermissible zone of *apparent,* as opposed to actual, bias. A general rule has emerged that a decision made by a tribunal after a formal adversarial hearing, where that tribunal has previously generally supervised an investigation into the same matter or made a pre-hearing determination of probable cause, is not per se an adjudication rendered by a biased tribunal, as long as the

prosecutorial and investigatory aspects of the matter are adequately separated from the adjudicatory function. *Bruteyn Appeal,* 32 Pa. Commonwealth Ct. 541, 380 A.2d 497 (1977) ; *see also, State Dental Council and Examining Board v. Pollock,* 457 Pa. 264, 318 A.2d 910 (1974).

We believe that *Bruteyn Appeal, supra,* provides the guiding principle for this case:

> We do not mean . . . to minimize the potential dangers arising when those who investigate also adjudicate. We are simply recognizing that inquiries into probable cause do not raise an unconstitutionally high risk of bias or prejudgment so as to invalidate *ipso facto* a decision, after a contested hearing, that there has been a violation of the statute. Some finding of actual bias is required. To hold otherwise would '[overlook] the purpose of judicial and quasi-judicial proceedings as well as the ability of honest men to perform the duty required of them as normal human beings endowed with intellect and reason.' Vandergrift Borough v. Polito, 407 Pa. 286, 288, 180 A.2d 215, 215 (1962). (Citation omitted.)

32 Pa. Commonwealth Ct. at 548, 380 A.2d at 501. *See also, Rayne v. Edgewood School District,* 19 Pa. Commonwealth Ct. 353, 338 A.2d 151 (1975).

In the present case, one of the three Board members signed a letter informing Redo of his suspension and thereafter a different Board member signed a letter notifying him of his dismissal. At the hearing, those two members testified that they respectively signed the letters based upon the recommendations of the police chief, who filed the charges, and the township solicitor, who prepared the letters, and that therefore each signature represented only pro forma approval. They thus inquired into the matter only gener-

ally and only enough so that their signatures indicated a determination in the nature of probable cause.[3]

Because no member of the Board here was the complainant, nor even prepared the charges, under the principles of *Bruteyn Appeal,* this case is on due process grounds similar to *Barr v. Pine Township Board of Supervisors,* 20 Pa. Commonwealth Ct. 255, 341 A.2d 381 (1975); there, although a board member actually prepared the charges for disposition, we found the determinative fact to be that the charges were filed by the chief of police, not a board member directly involved in the incident resulting in the charge.

Nor can we accept appellant's remaining due process arguments relating to the actual fairness of the hearing. We are convinced that the prosecutorial and judicial functions at all times remained distinct during the hearing and the decision-making process.

Whatever due process concerns are raised by the fact that the township solicitor, the prosecuting attorney, may have individually "briefed" two members of the Board as to the charges in order that they had enough information to honestly sign the suspension and termination letters sent to Redo, are certainly cured by the solicitor's rigid disassociation of himself from the case during the hearing and thereafter, and the presence of independent counsel to advise the Board during the hearing and the decision.[4] *Compare,*

---

[3] The parties particularly argue over the significance of a phrase in the dismissal letter indicating that the Board had decided on such action after "careful consideration" of the charges. The court below thoroughly considered the implied assertion that the dismissal letter constituted evidence of actual bias. It found dispositive of the issue the testimony of the Board members that they never in fact conferred with one another on the matter and the testimony of the Board chairman that he only cursorily reviewed the charges so as to be able to sign the dismissal letter with sincerity. We agree.

[4] This case is, by analogy, covered by our decision in *Steffen v. Board of Directors of South Middletown Township School District,*

474

*Horn v. Township of Hilltown,* 461 Pa. 745, 337 A.2d 858 (1975) *with Pennsylvania Human Relations Commission v. Feeser,* 469 Pa. 173, 364 A.2d 1324 (1976); *see also, In Re: Appeal of Feldman,*      Pa. Commonwealth Ct.     , 395 A.2d 602 (1978).

That the Board's counsel was also the solicitor for the township zoning hearing board does not destroy his independence; that establishes his independence because the *Horn* case, *supra,* requires that zoning hearing boards have independent counsel.

Unlike other statutes applicable to Court of Common Pleas review of a dismissed or suspended policeman, the Police Tenure Act does not contain a provision explicitly delineating the court's scope of review on appeal. Section 5 of the Act provides that the employee shall have a right to appeal to the Court of Common Pleas, without further elaboration.[5]

It is not necessary to engage in a prolonged review of the complicated history of the scope of review of police civil service cases,[6] because we believe that the

---

32 Pa. Commonwealth Ct. 187, 377 A.2d 1381 (1977) wherein we noted that the president of the school board, like the Board chairman here, made all the rulings on the motions and objections at the hearing and that the school solicitor, like the township solicitor here, merely voiced his own personal objections as attorney for the other side and in no way made any final determinations on objections presented. We also found it significant that the school board, like the township board here, retained separate counsel to advise it during the course of the hearing.

[5] This is the only statute granting police tenure rights that does not describe the nature of the review to be used by the Court of Common Pleas.

[6] The township would fault the court below for not having considered the scope of review set forth in the Local Agency Law applicable at that time, the Act of December 2, 1968, P.L. 1133, *formerly* 53 P.S. §11301 et seq., repealed by the Judiciary Act Repealer Act (JARA), Act of April 28, 1978, P.L. 202, 42 P.S. §2001 et seq. However, Section 10 of the Local Agency Law in effect at that time,

following observations by our Supreme Court on that matter are controlling:

> [I]n view of the procedure outlined in the Act of 1941[7] which expresses the intent of the legislature in substantially similar proceedings, we are of opinion that the Court of Common Pleas on such an appeal may take additional testimony and find for itself the facts necessary to a just determination of the controversy. And, for the same reason, it would seem that the Court of Common Pleas should have the same power under the 1951 statute [the Police Tenure Act] as that given it by the Act of 1941 to determine the case 'as the court deems proper,' and to make its own order concerning the suspension, discharge, demotion or reinstatement of the officer.

*Appeal of Vega,* 383 Pa. 44, 48, 117 A.2d 736, 738 (1955).

Consequently, we will review the lower court's action in the present case in the same manner as we would an appeal taken under the Borough Code or First Class Township Code; those statutes expressly provide for "as the court deems proper" review on appeal to the Court of Common Pleas. The applicable law under the Borough Code where the court below has taken additional testimony and issued an order modi-

---

*formerly* 53 P.S. §11310, provided that the section of the Local Agency Law providing the court's procedure on appeal "shall not apply to any adjudication which under any existing act may be appealed to a court of record." The Police Tenure Act is one such act.

[7] The original act granting job tenure rights to police in certain boroughs, incorporated towns and first class townships, the Act of June 5, 1941, P.L. 84, *formerly* 53 P.S. §351.1 et seq., repealed as applied to boroughs by the Borough Code of 1947 and repealed in toto by the First Class Township Code of 1949. *See also, George v. Moore,* 394 Pa. 419, 147 A.2d 148 (1959).

fying the penalty imposed was cogently explained in *Re: Appeal of Fuller*:

> [O]ur scope of review is to determine whether the *court* was guilty of an abuse of discretion or an error of law. Eppolito v. Bristol Borough, 19 Pa. Commonwealth Ct. 99, 339 A.2d 653 (1975).
>
> . . . .
>
> [U]nder the Borough Code a court of common pleas may modify a penalty . . . [although] even under the 'as the court deems proper' language the court cannot have total, unfettered discretion. . . . In essence, in Eppolito we held that the court had abused its discretion in modifying what was admittedly a discretionary decision by the [Borough] Civil Service Commission. . . . [W]e conclude the broad language of Section 1191 of the Borough Code, 53 P.S. §46191, empowers a Court of Common Pleas to modify a penalty imposed by a Borough Civil Service Commission as long as the court itself does not thereby commit an abuse of discretion. (Emphasis in original.)[8]

25 Pa. Commonwealth Ct. 116, 118, 120, 358 A.2d 756, 757, 758 (1976).

Thus, linking our own scope of review to the scope of review applicable to the lower court, we here review the question of law of whether the facts found by the

---

[8] Also, as in *Fuller*, the parties here argue the meaning of *Baker Case*, 409 Pa. 143, 185 A.2d 521 (1972). What we said in *Fuller* is equally controlling here; that is, *Baker* was decided under statutory language more restrictive than the "as the court deems proper" review. The leading case under the broader scope of review is not *Baker*, but *Lower Merion Township v. Turkelson*, 396 Pa. 374, 152 A.2d 724 (1959) where our Supreme Court sustained the modification of a dismissal into a suspension, saying that the Court of Common Pleas had such discretion because the statute allowed it to decide the case as it "deems proper."

*court* constitute just cause for dismissal and the question of whether the *court* abused its discretion by modifying the Board's exercise of its initial discretion to decide whether, under the circumstances, the penalty of dismissal should have been imposed. *Cf. Oswald v. City of Allentown,* 36 Pa. Commonwealth Ct. 238, 388 A.2d 1128 (1978).

The court properly sustained the Board's legal conclusion that Redo's involvement in the fracas on December 20, 1976, especially in light of the prior warning given to him, constituted conduct unbecoming an officer. He need not have been on duty at the time. *See Faust v. Civil Service Commission,* 22 Pa. Commonwealth Ct. 123, 347 A.2d 765 (1975); *Gabauer v. Civil Service Commission,* .6 Pa. Commonwealth Ct. 646, 297 A.2d 507 (1972).

An officer's past record, the effects of his conduct on the morale of the police force and on the citizenry's respect for the force are all relevant factors in deciding the severity of the penalty. After reviewing the record, and considering that the court took additional testimony relating to all three issues,[9] we cannot say that the lower court manifestly abused its discretion in modifying the Board's dismissal, nor that it cavalierly overrode the Board's judgment on this matter.

ORDER

AND Now, this 8th day of May, 1979, the order of the Court of Common Pleas of Chester County at Misc. No. 40, 1977, is affirmed.

---

[9] In particular, the court considered testimony from two of Redo's former superior officers, both of whom testified that Redo was basically a good officer and if he had a flaw it was his short temper. The court's opinion took notice that suspicions of marital infidelity have historically aroused passionate and intemperate responses in even the most docile of men. The court also considered testimony from Redo's fellow-officers and from citizens who had attended the hearings before the Board.