Lower Providence Township and Lower Providence Township Board of Supervisors, Appellants *v.* Joseph Nagle.

Submitted on briefs April 4, 1983, to Judges RogERS, WILLIAMS, JR. and BARBIERI, sitting as a panel of three.

*Richard C. Sheehan,* for appellants.

*Wallace A. Murray, Jr., Wisler, Pearlstine, Talone, Craig and Garrity,* for appellee.

OPINION BY JUDGE BARBIERI, January 3, 1984:

Lower Providence Township (Township) and the Lower Providence Township Board of Supervisors (Board) appeal here from an order of the Court of Common Pleas of Montgomery County directing the Township to reinstate Joseph Nagle to his former position as a sergeant on the Township's police force. We affirm.

On October 9, 1980, the Board informed Sergeant Nagle, a fifteen year veteran on the Township's police force, by letter, that he was being indefinitely suspended from his job. This letter, although not made a part of the record certified to this Court, was quoted in its entirety by the Court below, and reads in pertinent part as follows:

> Please be advised that the Board of Supervisors has met in an emergency personnel session on Thursday, October 9, 1980, at 3:30 P.M. At this time, in the presence of all Board members, medical reports from Jonathan H. Claney, M.D. and Ron Fischman, Ed.D. were opened and read. Copies of these reports are enclosed herein and for purposes of the Police Tenure Act, they shall serve as the written statement of charges filed against you. . . .

> As a result of reading the medical reports, the Board voted to suspend you as an active Police Officer immediately and indefinitely. . . .

At the time Sergeant Nagle received this notice, he was on an authorized leave of absence, and had agreed, at the request of the Township's Police Chief, to be examined by Dr. Claney and Mr. Fischman, because he desired psychological counseling. He was not aware, however, that these examinations were being conducted for investigative purposes, and had not authorized the release of any information to the Township.

Reacting to the Board's suspension letter, Sergeant Nagle submitted to psychological examinations by William J. Kelly, Ph.D., a psychologist, Dr. Harold Byron, a psychiatrist, and Dr. Robert Benejamin, a psychiatrist, each of whom found him to be psychologically healthy, and forwarded reports from each examiner to the Board. Sergeant Nagle also consented to a reexamination by Dr. Claney, who submitted a new report to the Board on January 19, 1981. After reviewing this evidence, the Board voted on January 27, 1981, without conducting a hearing on the matter, to dismiss Sergeant Nagle on the grounds of mental incompetence. After having so voted, however, the Board decided, apparently at the request of Sergeant Nagle, to conduct hearings on his dismissal. Three days of hearing were subsequently conducted before the Board, at which both parties presented evidence pertaining to Sergeant Nagle's mental condition. After reviewing this evidence, the Board, by a vote of three to two, reaffirmed its initial decision to dismiss, and an appeal was taken to the court of common pleas. In his appeal notice, Sergeant Nagle raised for the first time the issue of bias, alleging that two of the Board's supervisors had been biased against him, and further alleged that the Board's decision was not based "upon the preponderance of the evidence." At an initial hearing on this appeal, the parties agreed to have the "preponderance of evidence" issue decided on the record made before the Board, but to have evidentiary hearings on the issue of bias, and the court, agreeing to this arrangement, subsequently conducted two day of hearings on this issue. At these hearings it was revealed (1) that one of the Township supervisors had initially called a meeting of the Board to discuss rumors she had heard to the effect that Sergeant Nagle was a homosexual, (2) that no evidence of homosexuality was ever presented to the Board, and (3) that the Board then re-

quested the Township's Chief of Police to have Sergeant Nagle examined by a psychiatrist. It was also revealed that this supervisor had written to the Township's manager on two occasions, once before the initial vote to dismiss, and once again before the second vote to dismiss, requesting any information concerning complaints or disciplinary actions taken against Sergeant Nagle, and that she suggested in the second letter that the locks in the Police Deparment be changed. Finally, there was testimony presented that one of the other supervisors had indicated during the course of the hearings that he saw no need for the hearings since the Board had already decided to dismiss Sergeant Nagle by so voting on January 19, 1981. The Township, for its part, seemed to concede the issue of bias by presenting evidence, in the form of newspaper editorials, indicating that Sergeant Nagle should have known of the bias of the supervisors during the course of the hearings before the Board. The Township raised no objection, however, to the fact that the bias issue was being raised for the first time on appeal, and, as noted above, agreed to the conduct of hearings on this issue before the court. After reviewing this evidence, the court issued a lengthy decision reversing Sergeant Nagle's dismissal. In its decision, the court concluded (1) that it had to consider the matter de novo, (2) that the medical evidence the Township presented to the Board was not "clear and convincing" and hence could not support a dismissal, and (3) that the Board's decision was invalid since the evidence of bias indicated that " [Sergeant] Nagle's hearing did not meet the requirements of the Local Agency Law. . . ."[1] The present appeal followed.

---

[1] The court also indicated in its order that an appeal by the Board should not operate as an automatic supersedeas pursuant to Pa. R.A.P. 1736(b), and Sergeant Nagle is currently working on the Township's police force.

Before this Court, the Township initially alleges that the court of common pleas erred as a matter of law by "substituting its judgment of the weight of the conflicting medical testimony for that of the Board of Supervisors." We agree.

Sergeant Nagle was dismissed from his position pursuant to the authority granted in Section 2 in what is popularly referred to as the Police Tenure Act (Act), Act of June 15, 1951, P.L. 586, *as amended,* 53 P.S. §812. Section 5 of the Act, 53 P.S. §815, provides that the "dismissed employee shall have the right to appeal to the Court of Common Pleas of the county in which he was employed[,]" but provides no explanation of the court's scope of review in such appeals. With respect to this question, however, our Supreme Court stated the following in *Vega Appeal,* 383 Pa. 44, 117 A.2d 736 (1955):

> [I]n view of the procedure outlined in the Act of 1941 which expresses the intent of the legislature in substantially similar proceedings, we are of [the] opinion that the Court of Common Pleas on such an appeal may take additional testimony and find for itself the facts necessary to a just determination of the controversy. And, for the same reason, it would seem that the Court of Common Pleas should have the same power under the 1951 statute as that given it by the Act of 1941 to determine the case 'as the court deems proper,' and to make its own order concerning the . . . discharge of the officer.

*Id.* at 48, 117 A.2d at 738. Expanding on this analysis, we noted in *In Re: Appeal of Redo,* 42 Pa. Commonwealth Ct. 468, 401 A.2d 394 (1979), that appeals brought pursuant to Section 5 of the Act were exempted from the provisions of Section 10 of the Local

Agency Law[2] in effect at the time the appeal was taken in that case, since Section 10 expressly provided that the provisions of the Local Agency Law "shall not apply to any adjudication which under any existing act may be appealed to a court of record." In 1978, however, Section 10 of the old Local Agency Law was repealed, and Section 751(b) of the current Local Agency Law (Law), 2 Pa. C. S. §751(b), was enacted. Section 751(b) now states that "[t]he provisions of this subchapter *shall apply* to any adjudication which under any existing statute may be appealed to a court of record, but only *to the extent not inconsistent with such statute.*" (Emphasis added.) Since our review of the provisions of the Law and the Act has failed to reveal any inconsistencies between the two statutes, we must conclude that the provisions of the Law, and more particularly Section 754(b) of the Law, 2 Pa. C. S. §754(b), now define the court of common pleas' scope of review in these cases.

Section 754(b) provides in pertinent part that
[i]n the event a full and complete record of the proceedings before the local agency was made, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, . . . or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.
Section 754(a) of the Law, 2 Pa. C. S. §754(a), in turn, provides that where a full and complete record of the proceedings before a local agency has not been made, the court "may hear the appeal de novo, or may remand the proceedings to the agency for the purpose of

---

[2] Act of December 2, 1968, P.L. 1133, *formerly* 53 P.S. §11310, repealed by Section 2(a) of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202.

making a full and complete record or for further disposition. . . ."

In the present case, the court concluded (1) that since the Board did not address the question of bias, the record of the proceedings before the Board was incomplete, and (2) that the court was therefore authorized by the provisions of Section 754(a) of the Law to hear the appeal de novo. It is apparent, however, that the Board did not address the issue of bias because that issue was not raised before it, and since a full and complete transcript of the proceedings before the Board on the issues that were properly raised there, was forwarded to the court, we must conclude that the court improperly heard the appeal de novo. *In Re: Appeal of Gettler*, 42 Pa. Commonwealth Ct. 415, 400 A.2d 1339 (1979).

At this juncture, we could review the voluminous record in this case to determine if substantial evidence exists in support of the Board's finding that Sergeant Nagle is mentally disabled from performing his job. We believe that such an endeavor is unnecessary here, however, in light of the court of common pleas' alternate conclusion that the Board's decision was invalid because of impermissible bias, a conclusion which we believe, contrary to the Township's assertions, to be correct. Before addressing this issue, however, we feel compelled to comment on the procedural posture of this case.

Section 753(a) of the Law, 2 Pa. C. S. §753(a), clearly provides with certain exceptions not applicable here that a party who has proceeded before a local agency may not raise on appeal any question not raised before the local agency "unless allowed by the Court upon due cause shown." Even if due cause is shown, of course, it is clear from reading Section 753 (a) in conjunction with Section 754 that only legal, and not factual issues, may be raised for the first time

on appeal. In the event a party learns of after discovered evidence, as on a question such as bias, he may establish a record on this question by petitioning for reconsideration, or, if such petitions are not authorized, by filing a cause of action addressed to the court of common pleas' original jurisdiction. Of course "[n]o objection to a governmental determination shall be defeated by reason of error in the form of the objection[,]" and

> [i]f an appeal is improvidently taken to a Court under any provision of law from the determination of a governmental unit where the proper mode of relief is an action in the nature of equity . . . or otherwise, this alone shall not be a ground for dismissal, but the papers . . . shall be regarded and acted on as a complaint . . . against the governmental unit. . . .

Section 708 of the Judicial Code, 42 Pa. C. S. §708.

Here, since there is (1) no indication in the record before us that Sergeant Nagle knew or should have known of the evidence indicating bias which the court of common pleas relied upon prior to the issuance of the Board's order,[3] (2) no indication in the record before us that petitions for reconsideration are authorized in proceedings before the Board, and (3) no indication that the Township raised any objections to the hearing on the bias issue either below or here, we conclude for the purpose of this appeal that Sergeant Nagle could have properly filed an action addressed to the court of common pleas' original jurisdiction to make a record on the bias issue. Having so concluded,

---

[3] Although a newspaper editorial dated prior to the issuance of the Board's decision was offered into evidence which indicated that the editorial writer believed that certain supervisors were biased, this evidence doesn't relate to the issue of the impermissible commingling of prosecutorial and adjudicatory functions upon which the court based its decision, and hence is not evidence of notice.

we believe that the court of common pleas should have treated that portion of Sergeant Nagle's notice of appeal pertaining to bias as a cause of action against the Township. Section 708 of the Judicial Code. Since the court, in effect, did do this by conducting hearings on the bias issue, although for the wrong reason, that being its conclusion that it could hear the appeal de novo, we conclude that we can review the evidence presented to the court, to determine if the Board's order was invalid because of impermissible bias.

A general rule has emerged that a decision made by a tribunal after a formal adversarial hearing, where that tribunal has previously generally supervised an investigation into the same matter or made a pre-hearing determination of probable cause, is not per se an adjudication rendered by a biased tribunal, as long as the prosecutorial and investigatory aspects of the matter are adequately separated from the adjudicatory function.

*Redo,* 42 Pa. Commonwealth Ct. at 471-72, 401 A.2d at 396 (1979). In applying this principle to cases arising under the Act, we have concluded that there is an adequate separation of the prosecutorial and investigative aspects of a matter and the adjudicatory functions where a member of the Board of Supervisors, in the course of performing his job as township manager or mayor, investigates or prepared charges, but *does not file them,* and then participates in deciding the merits of the *filed charges. See Appeal of Schultz,* 58 Pa. Commonwealth Ct. 24, 427 A.2d 290 (1981) ; *Kelly v. Warminster Township Board of Supervisors,* 44 Pa. Commonwealth Ct. 457, 404 A.2d 731 (1979) ; *Barr v. Pine Township Board of Supervisors,* 20 Pa. Commonwealth Ct. 255, 341 A.2d 581 (1975) ; *see also Redo* (No impermissible commingling of functions where board members signed suspension and termination

letter, but police chief investigated and filed charges.). We believe that the present case is distinguishable from these earlier cases, however. Here, the charges were not investigated by a member of the Board responding to a problem in the course of performing his or her supervisory duties as a mayor or town manager. Instead, the investigation was initiated by a Board member, who wished to explore the question of Sergeant Nagle's alleged homosexuality, was entirely investigated by the Board, and the charge of mental disability was *filed* by the Board in the form of their October 9, 1980 letter to Sergeant Nagle, thereby distinguishing this case from *Schultz, Kelly, Redo,* and *Barr.* Moreover, at least one of the supervisors continued requesting information in this case even after the hearing was in progress. We believe that these facts indicate that there was an impermissible commingling of the investigatory, prosecutional, and adjudicatory functions in the extraordinary circumstances of this case, and we will therefore affirm the court of common pleas' decision in this regard.

ORDER

Now, January 3, 1984, the order of the Court of Common Pleas of Montgomery County at No. 81-09474, dated February 12, 1982, is affirmed.

Judge ROBERT W. WILLIAMS, JR. concurs in the result only.