## Hancock v. Bd. of Supervisors of Lower Gwynedd Twp.

534

*Parker Wilson,* for Hancock.
*John T. Acton,* for Gwynedd Township.

BROWN, *J.,* September 18, 1984—In May, 1983, Charles Hale, then a member of the Board of Supervisors of Lower Gwynedd Township, this county, received a telephone call from a patrolman on the township's police force. The officer requested a meeting to discuss what he considered to be illegal practices in the department. Several days later the two met and Hale was told that the township's chief of police, Edward W. Hancock, had instituted certain scheduling practices which resulted in patrolmen being paid for days not worked. Hale thereafter investigated the matter on his own and later informed the township manager, Frank Herzog, of the conversation with the officer and of the results of his investigation. After further investigation, Herzog suspended Hancock in a lengthy letter dated August 9, 1983 and charged him with a number of practices contrary to the collective-bargaining agreement between the police and the township which resulted in officers being paid for services not rendered.

Hancock demanded a hearing before the board of supervisors pursuant to the Police Tenure Act.[1] Prior to the hearing, he sought unsuccessfully to have Hale recuse himself from the hearing. After eight nights of hearings the board, by a vote of two to one, dismissed Hancock as chief of police. Hancock appeals, alleging first that Hale had no duty to supervise the police department and therefore had no authority to undertake the investigation. He also alleges his due-process rights were violated in that Hale's participation in the decision to dismiss him constituted an impermissible commingling of the investigatory, prosecutorial and adjudicative functions.

Concerning Hales' authority to supervise the police department, on November 12, 1980 the Board of Supervisors of Lower Gwynedd Township enacted Ordinance 182 which created the office of township manager. Section six provided that the township manager shall:

"a. Supervise and be responsible for the activities and administrative functions of all township departments, except those directly related to the performance of a police officer's duties and except as otherwise provided by ordinance or law." On October 19, 1982 that section was amended by ordinance 196 and now provides the township manager shall:

"a. Supervise and be responsible for the activities and administrative functions of all township departments, except as otherwise provided by ordinance or law." Clearly, under Ordinance 196, the township manager alone was vested with the au-

---

1. Act of June 15, 1951, P.L. 586, as amended, 53 P.S. §811 et seq.

thority to supervise the police department.

We find that even assuming Hale had general supervisory duties as a board member, the investigation he undertook did exceed that permitted of one who later sits as a judge. In Appeal of Redo, 42 Pa. Commw. 468, 401 A.2d 394 (1979), the court stated the applicable principle as follows:

"A general rule has emerged that a decision made by a tribunal after a formal adversarial hearing, where that tribunal has previously generally supervised an investigation into the same matter or made a prehearing determination of probable cause, is not per se an adjudication rendered by a biased tribunal, as long as the prosecutorial and investigatory aspects of the matter are adequately separated from the adjudicatory function."

In Lower Providence Township v. Nagle, 79 Pa. Commw. 322, 469 A.2d 338 (1984), where impermissible commingling of the functions was found because a board member initiated the investigation of a police officer, the Commonwealth Court, after citing Redo, stated, "Here, the charges were not investigated by a member of the board responding to a problem in the course of performing his or her supervisory duties as mayor or town manager. Instead, the investigation was initiated by a board member, who wished to explore the question of Sergeant Nagle's alleged homosexuality . . . ."

Therefore, Hale's investigation must be justified either as general supervision of an investigation into the matter, or as a prehearing determination of probable cause. Concerning supervision of an investigation, in Bruteyn Appeal, 32 Pa. Commw. 541, 380 A.2d 497 (1977), appellant complained of impermissible commingling of the functions where an investigation was conducted. In holding there was no due-process violation, the court noted that a sep-

arate agency conducted the investigation, the examining board only supervised.

But here Hale actually conducted an investigation. After the meeting with the officer, Hale went to the township building and reviewed the "day books" (books kept by dispatchers listing the names of those who worked on a particular day). Finding them incomplete, he learned sometime in early June that the scheduling officer, Al Elm, had additional records in his desk. He went to Elm's desk and found a scheduling diary. The next day Elm provided Hale with employee attendance cards which showed vacation, compensatory and sick time and explained codes he used in the cards. Hale also obtained the records of the part-time officers from Herzog. Later, he acquired a record of overall compensatory time for each of the 17 officers. He then had copies made of these records and reviewed them. Later in June, Hale took the records to his place of business and with the assistance of two secretaries drew up index cards showing each officer's work schedule and the amount of time off during a seven-month period. Hale discovered that the officers were being compensated for six-day vacation weeks instead of the proper five-day weeks. He also noticed a pattern of officers on the midnight shift being given off Fridays and officers on the day shift being given off Sundays. Hale then set up a meeting with Herzog and Elms on June 23 and the discussion was recorded on tape. The tape is part of the record on appeal to this court. The phrasing of Hale's questions to Elm at the meeting clearly suggest he had a thorough understanding of the police department's scheduling practices.[2]

___

2. Herzog himself thereafter spoke with Hancock, spent some time reviewing the records on a personal computer and

The township claims Hale only did some preliminary checking to determine if the rumor had any factual basis, and therefore only made a prehearing determination of probable cause. The extent of the investigation suggests otherwise. The "prehearing determination of probable cause" language in the general rule has not been read to allow the type of investigation conducted by Hale. Rather, the cases hold only that it is not impermissible for a board member to sign subpoenas, suspension, or termination papers and later decide the case. For example, in Redo, supra, a police officer challenged his dismissal by the township alleging impermissible commingling because the board exercised the judicial function while already thoroughly familiar with the case.

The court stated:

"[2] In the present case, one of the three board members signed a letter informing Redo of his suspension and thereafter a different board member signed a letter notifying him of his dismissal. At the hearing, those two members testified that they respectively signed the letters based upon the recommendations of the police chief who filed the charges and the township solicitor who prepared the letters, and that, therefore, each signature represented only pro forma approval. They thus inquired into the matter only generally and only enough so that their signatures indicated a determination in the nature of probable cause."

In Appeal of Schultz, 58 Pa. Commw. 24, 427 A.2d 290 (1981), the mayor only signed subpoenas and a notice of termination. See also Kelly v. War-

then hired an accounting firm to examine the police department's and township's books and records for the years 1978 through mid-1983.

minster Township Board of Supervisors, 44 Pa. Commw. 457, 404 A.2d 731 (1979).

We reject Hancock's claim that actual bias against him was the motivation for Hale's investigation. On the contrary, Hale acted in good faith in undertaking the investigation; his fault lay in making too comprehensive a pretrial probe. In so doing he melded the investigative and prosecutorial functions with the adjudicative.

This decision rests on the impermissible commingling of those functions alone. We do not pass on the merits of Hancock's dismissal. The case is remanded to the lower Gwynedd Board of Supervisors for a new hearing in accordance with the requirements of the Police Tenure Act.

