**Officer J. Adam POWELL, Appellant,**

v.

**MIDDLETOWN TOWNSHIP BOARD OF SUPERVISORS.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 27, 2001.

Decided Aug. 16, 2001.

A I can perform it adequately. I really would like to have a deputy to help make it a little easier on me.

(N.T. at 74; R.R. at 64a.)

Daniel J. Alexy, Newtown, for appellant.

M. Kristin Malone-Hicks, Philadelphia, for appellee.

Before PELLEGRINI, J., LEADBETTER, J., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Judge.

Officer J. Adam Powell (Powell) appeals from an order of the Court of Common Pleas of Bucks County that affirmed the decision of the Middletown Township Board of Supervisors (Board) terminating his employment pursuant to Section 2 of the Act of June 15, 1951, P.L. 586, commonly known as the Police Tenure Act (Act), *as amended,* 53 P.S. § 812.[1] We affirm.

---

1. Section 2 of the Act provides in relevant part that "[n]o person employed as a regular full time police officer in any police department .... shall be suspended, removed or

Powell was employed by Middletown Township (Township) as a patrolman in its police department since 1993. The events leading to the termination of Powell's employment, as presented at a hearing before the Board, are as follows. In the early morning on December 13, 1998, Powell was working on the twelve-hour shift from 7:00 p.m. to 7:00 a.m. He was permitted to take a meal break for forty-five minutes while working on the twelve-hour shift. At approximately 2:15 or 2:20 a.m., Powell signed out for a meal break and went to the diner, Great American Cafe, with Officer Reeves.

At the diner, Reeves told a waitress to send two glasses of water to two female customers, informing her that he was buying them a drink. Powell and Reeves later sat down with the two women and began conversing with them. At approximately 3:30 a.m., Officers Donahue and Denton came to the diner for a meal break. Shortly thereafter, Officers Denton and Reeves had to leave the diner to answer a call in Bristol Borough. As he was leaving the diner after finishing his meal, Officer Donahue stopped to talk to Powell who was sitting in the booth with the two women. Donahue jokingly asked Powell what would happen if his wife saw him sitting with the women. Powell then pulled his semi-automatic service revolver from the holster and pointed it directly at Donahue for two to four seconds. Powell's revolver was about three feet from Donahue when it was pointed at him. Although Powell's finger was outside the trigger guard, the magazine was not removed from the revolver. Donahue then left the diner. Powell testified that he was only joking around at that time.

Right after leaving the diner, Donahue heard on the radio that a domestic disturbance was taking place at Texaco Star Mart located only seventy-five to eighty feet from the diner. Donahue then informed the county radio room that he would investigate the disturbance. Under the police department policy, two officers must respond to a domestic disturbance. Normally, any officer located closest to the disturbance scene must respond to a backup call. Although Powell was at the diner at that time and located closest to the scene, he failed to respond to the backup call. Instead, another officer, who was a quarter mile from the scene, responded to the backup call. Powell admitted that he was still at the diner at 4:15 a.m. in that morning.

On January 23, 1999, Donahue made a formal report regarding the December 13, 1998 incident at the diner. Following an internal investigation, the Township police chief recommended termination of Powell's employment, stating that Powell committed conduct unbecoming a police officer, neglected his official duty and violated various provisions of the Rules and Regulations of the police department. After an informal hearing held on March 9, 1999, the Township manager determined that the police chief's recommendation was justified. After a full hearing subsequently held on March 31, 1999, the Board decided to terminate Powell's employment by a four-to-one vote.

Powell appealed the Board's decision to the trial court and demanded a *de novo* hearing to present additional evidence. Powell also sought to depose the members of the Board and the Township manager, alleging that the Board's decision was unduly influenced by the threat of the Town-

reduced in rank except for the following reasons: .... (2) neglect or violation of any official duty; .... (4) inefficiency, neglect,

intemperance, disobedience of orders, or conduct unbecoming an officer....."

ship police officers. The trial court denied Powell's request for a *de novo* hearing, refused to permit him to take depositions and affirmed the Board's decision. Powell's appeal to this Court followed.[2]

■ Powell contends that the Board's findings that he committed conduct unbecoming an officer, neglected his official duty and violated the rules and regulations of the police department are not supported by substantial evidence in the record.

■ The courts have defined the term "conduct unbecoming an officer" under Section 2 of the Act as conduct tending to destroy public respect and confidence in the operation of municipal services or affecting the morale or efficiency of the police department. *Zeber Appeal*, 398 Pa. 35, 156 A.2d 821 (1959); *Appeal of Wallace*, 90 Pa.Cmwlth. 539, 496 A.2d 102 (1985). As this Court stated in *Cerceo v. Darby*, 3 Pa.Cmwlth. 174, 281 A.2d 251, 255 (1971):

> We demand from our law enforcement officers, and properly so, adherence to demanding standards which are higher than those applied to many other professions. It is a standard which demands more than a forbearance from overt and indictable illegal conduct. It demands that in both an officer's private and official lives he do nothing to bring dishonor upon his noble calling and in no way contribute to a weakening of the public confidence and trust of which he is repository.

Consequently, even off-duty conduct of a police officer may be a basis for finding conduct unbecoming an officer. *Civil Ser-*

*vice Commission of City of Philadelphia v. Wojtusik*, 106 Pa.Cmwlth. 214, 525 A.2d 1255 (1987). Conduct unbecoming an officer constitutes a just cause for terminating the officer's employment. *Mulholland v. Civil Service Commission*, 96 Pa.Cmwlth. 124, 506 A.2d 527 (1986).

At the hearing, Powell admitted that on December 13, 1998, he jokingly pointed his semi-automatic service revolver to his fellow officer at the diner in the presence of the customers. The Township Police Department Rule VV (use of weapon) provides: "Officers shall not use or handle weapons in a careless or imprudent manner. Officers shall use weapons in accordance with law and established departmental procedures." The officer and firearm instructor of the Township police department testified that he went over the firearm safety policy with the officers three or four times a year, including the "muzzle discipline" which prohibits the officers from pointing a firearm at the object that they do not intend to shoot, and that the officers are not permitted to point a service revolver at another officer "as horseplay or kidding around." N.T., p. 108.

The Township police chief also testified that there was absolutely no excuse for an officer to point a service revolver at anyone, especially at an officer, as a joke or prank because of "the serious consequences." *Id.* at 77. He stated: "We are trained to respond. We have, approximately—a fire fight lasts, approximately, one point eight seconds, and so, you're taught to respond quickly, not to hesitate, and so, potential for a disaster was there."

**2.** Where a complete record was developed before the local agency, the court must affirm the local agency's decision unless it determines that constitutional rights were violated, that an error of law was committed, that the procedure before the agency was contrary to statute, or that necessary findings of fact are not supported by substantial evidence. Section 754(b) of the Local Agency Law, 2 Pa. C.S. § 754(b); *Public Advocate v. Philadelphia Gas Commission*, 544 Pa. 129, 674 A.2d 1056 (1996); *Sparacino v. Zoning Board of Adjustment*, 728 A.2d 445 (Pa.Cmwlth.1999), *appeal denied*, 565 Pa. 680, 775 A.2d 811 (2001).

*Id.* at 77–78. When asked by the Board member, Powell acknowledged the inappropriateness of his behavior:

Q. What impression do you think that gives to the public when an officer pulls his gun on another officer, whether it's joking or he's pulling his gun on another officer?

A. It's not a good impression. I know it's wrong.

*Id.* at 137.

The facts in this matter are similar to those presented in *Newcomer v. Civil Service Commission of Fairchance Borough,* 100 Pa.Cmwlth. 559, 515 A.2d 108 (1986), *appeal denied,* 514 Pa. 626, 522 A.2d 51 (1987), which involved the police officer discharged for drawing his loaded service weapon and pointing at the borough ambulance volunteer as a "horseplay." This Court upheld the dismissal of the officer, stating that such misuse of the privilege of carrying a firearm constituted conduct unbecoming an officer. As in *Newcomer,* therefore, the Board was justified in terminating Powell's employment for pointing his service revolver at his fellow officer in the presence of the public. Powell's conduct exhibited his disregard of public respect and confidence and affected the morale of the police department. *Zeber Appeal; Appeal of Wallace.*

In addition, on December 13, 1998 Powell took the meal break for two hours in excess of forty-five minutes permitted for the officers working on the twelve-hour shift. Although Powell claimed that he signed back on duty at 3:15 a.m. after signing out for the meal break at 2:15 or 2:20 a.m., there was no record in the police department supporting Powell's claim, and he admitted that he was still at the diner at 4:15 a.m. Further, the police chief testified, and the Board so found, that Powell failed to respond to the backup call although he was located closest to the scene of the domestic disturbance, in violation of the police department's rules and regulations. Thus, the record also establishes Powell's neglect of his official duty and violation of the rules and regulations of the police department, thereby justifying the termination of his employment pursuant to Section 2 of the Act.

Powell contends, however, that because the trial court failed to grant his request for a *de novo* hearing and permit him to take depositions of the members of the Board and the Township manager "concerning after-discovered evidence of bias, undue influence, and improper ex parte intermeddling," the record in this matter is incomplete or nonexistent, and that the trial court's order affirming the Board's decision should be therefore vacated. Powell's Brief, p. 16.

Under Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b), the record before the local agency is full and complete if there is a complete and accurate record of the testimony taken so that the appellant is given a basis for the appeal and if the court is given a sufficient record upon which to rule on questions presented. *Monaghan v. Board of School Directors of Reading School District,* 152 Pa.Cmwlth. 348, 618 A.2d 1239 (1992). Only if the trial court determines that the record before the local agency is incomplete, the court has discretion to determine the manner of implementing a deficient record before the local agency: the court may either hear the appeal *de novo* or remand the matter to the agency for implementation of the deficient record or any further disposition of the case. Section 754(a) of the Local Agency Law; *Sparacino v. Zoning Board of Adjustment,* 728 A.2d 445 (Pa.Cmwlth. 1999), *appeal denied,* 565 Pa. 680, 775 A.2d 811 (2001).

Powell does not dispute that the record made before the Board completely and accurately reflected the evidence presented at the hearing, providing a basis for his appeal from the Board's decision to terminate his employment. Because the record before the Board was complete, the trial court did not have authority to hold a *de novo* hearing to permit Powell to present additional evidence under Section 754(b) of the Local Agency Law. *See also Kelly v. Warminster Township Board of Supervisors,* 44 Pa.Cmwlth. 457, 404 A.2d 731 (1979) (the trial court properly refused to permit introduction of additional evidence of bias, where the record before the board was complete).

To support his argument that the trial court erred in refusing to permit him to depose the Board members and the Township manager, however, Powell relies on *Lower Providence Township v. Nagle,* 79 Pa.Cmwlth. 322, 469 A.2d 338 (1984), and *Appeal of Lawrence Township,* 117 Pa. Cmwlth. 508, 544 A.2d 1070 (1988). Neither of these cases supports Powell's contention.

In *Nagle,* the township board of supervisors discharged the police officer for mental incompetence. On appeal, the parties agreed to have an evidentiary hearing regarding the officer's allegation that he was discharged because he was homosexual. After the *de novo* hearing, the trial court reversed the board's decision. On appeal, this Court concluded that the trial court erred in hearing the appeal *de novo* where the record of the board proceeding was full and complete on the issues raised before the board. This Court nonetheless affirmed the trial court's decision, holding that the board's decision was rendered invalid due to its members' bias shown in the record. In so holding, this Court stated:

> In the event a party learns of after discovered evidence, as on a question such as bias, he may establish a record on this question by petitioning for reconsideration, or, if such petitions are not authorized, by filing a cause of action addressed to the court of common pleas' original jurisdiction.

*Nagle,* 469 A.2d at 342–43.

Although the officer in *Nagle* did not file a separate action to raise the issue of bias, this Court treated his allegation of bias presented to the trial court as a cause of action addressed to the trial court's original jurisdiction. In support, the Court stated that there was no indication in the record that (1) the officer knew or should have known of bias before the board's decision; (2) he was aware that he may seek reconsideration of the board's decision; and (3) the township raised any objections to the hearing held on the issue of bias. Relying on *Nagle,* this Court held in *Appeal of Lawrence Township* that a party, who learns of after-discovered evidence, may file a petition for reconsideration or, if such petition is not authorized, an action invoking original jurisdiction of the trial court.

*Nagle* and *Appeal of Lawrence Township* are distinguishable and inapplicable to this matter. Powell never sought reconsideration of the Board's decision based on the alleged after-discovered evidence. Unlike those cases, the Township vigorously objected to Powell's request for a *de novo* hearing and permission to take the depositions on the issue of the alleged bias and undue influence. *Nagle* and *Appeal of Lawrence Township* do not stand for a proposition that whenever the appellant alleges after-discovered evidence, the trial court should treat such allegation as a separate action addressed to its original jurisdiction.

■ It is presumed that public officials have properly acted in accordance

with the law until proven otherwise. *Appeal of Kriss,* 57 Pa.Cmwlth. 326, 426 A.2d 1216 (1981); *State Board of Medical Education & Licensure v. Contakos,* 21 Pa. Cmwlth. 422, 346 A.2d 850 (1975). Further, the municipal board of supervisors has the primary responsibility and discretion to determine whether and how a police officer should be disciplined. *Borough of Jenkintown v. Civil Service Commission of Jenkintown,* 84 Pa.Cmwlth. 183, 478 A.2d 941 (1984).

■ In seeking to depose the members of the Board and the Township manager, Powell alleged that the parties attempted to settle the case after the hearing; his counsel later requested that the Board meeting scheduled for announcement of its decision be continued for one week; the parties thereafter exchanged several drafts of a proposed agreement; the parties reached an agreement to "suspend" him before the scheduled Board meeting on July 27, 1999; and the Township police officers and unknown individuals subsequently placed undue and improper influence on the members of the Board to renege on the agreement reached by the parties, including "a threat that various officers .... would 'turn their backs on the supervisors' ...., if the Board decided to suspend rather than terminate [him]." ¶ 25 of Petition for Appeal. Powell claimed that due to such threat, the Board decided to terminate his employment at the July 27, 1999 meeting, rather than suspending him as agreed by the parties. To support his allegations, however, Powell only attached the unsigned documents containing a notation, "DRAFT," and various hand-written changes.

■ Thus, Powell's allegations and the documents submitted to the trial court only showed that the parties unsuccessfully attempted to settle the case before the Board's decision by exchanging the drafts of a proposed agreement. They do not demonstrate that the parties entered into an agreement to suspend him before the Board's decision or that the Board decided to terminate his employment despite such agreement due to the "threat" made by the officers. Moreover, the Township's acknowledgment that one officer expressed his disapproval of the proposed settlement to the Township manager, who is not a member of the Board, even if true, would be insufficient to overcome the presumption that the Board acted properly. As the trial court stated, the morale of the police department is certainly a relevant consideration in deciding the appropriate disciplinary action. Hence, we reject Powell's challenge to the trial court's refusal to permit him to present additional evidence of the alleged bias and undue influence.

Accordingly, the order of the trial court is affirmed.

### *ORDER*

AND NOW, this 16th day of August, 2001, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is affirmed.