# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Churchill Community Development, LP, :
Paradigm Consultants, LLC, Ramesh :
Jain and Vikas Jain :
                                   :
                                   :
                                   :
            v.                     :    No. 208 C.D. 2019
                                   :    Argued:  October 3, 2019
Allegheny County Health Department, :
                        Appellant  :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE COHN JUBELIRER                    FILED:  December 27, 2019


Allegheny County Health Department (Department) appeals from the January 29, 2019 Order (Order) of the Court of Common Pleas of Allegheny County (trial court), which reversed Department Hearing Officer's[1] decision following an administrative hearing that Churchill Community Development, LP, Paradigm Consultants, LLC, Ramesh Jain, and Vikas Jain (collectively, Appellees) were able to prepay the penalty or post bond related to Appellees' alleged violation of Department Rules and Regulations.  Based on the foregoing decision, the Hearing Officer directed Appellees to prepay the entire penalty of $1,471,675 in order to proceed to an administrative hearing on the merits of their appeal.  When Appellees appealed without prepaying, the Hearing Officer found that they waived a hearing

---

[1] At the time of the Hearing Officer's hearing and decision, the Hearing Officer was Department's only hearing officer.

1

and owed the penalty. (Reproduced Record (R.R.) at 1056a-57a.) After reversing the Hearing Officer's decision, the trial court ruled that, if Department proceeded with its action against Appellees, the matter should proceed to a hearing on the merits before a Hearing Officer. (Order.) In addition, the trial court vacated "[t]he penalty imposed by the Hearing Officer." (*Id.*) On March 28, 2019, the trial court issued Findings of Fact and Conclusions of Law (Opinion) in support of the Order. (Trial Court's Opinion (Trial Ct. Op.).) Upon review, we agree with the trial court that Department failed to rebut Appellees' evidence of their inability to prepay at the administrative hearing and, therefore, that this matter should proceed to a hearing on the merits of the violations. Therefore, we affirm.[2]

## I. BACKGROUND

### A. Enforcement Order and Department Action

On February 28, 2016, Department received notice that individuals were observed removing suspected asbestos-containing materials from a building owned by Appellees (Building #501) without a license and without a licensed abatement contractor as required by Article XXI of Department Rules and Regulations. (R.R. at 0003a-0011a.) On that same day, Department inspectors investigated Building #501 with the local building inspector and local fire marshal. (*Id.* at 0004a.) Department inspectors concluded that asbestos-containing materials were removed from Building #501. (*Id.*) On March 6, 2017, Department inspectors inspected another building owned by Appellees (Building #401) and discovered the same issues. (*Id.* at 0030a-0039a.) On March 2 and 6, 2017, Department entered

---

[2] Upon Department's appeal to this Court, Appellees filed an application seeking to quash the notice of appeal, which this Court denied by memorandum opinion and order dated April 30, 2019.

emergency orders (Emergency Orders) directing Appellees to cease work, restricting entry into Building #501, and requiring Appellees to file the proper applications for removing asbestos-containing material within 30 days of receipt of the Emergency Orders.[3] (*Id.* at 0011a-0013a, 0024a-0025a.) Department issued an Enforcement Order regarding Building #401 on March 7, 2017. (*Id.* at 0027a.) On March 13, 2017, Appellees appealed the March 2, 2017 Emergency Order and the Enforcement Order. (*Id.* at 0041a-42a, 0044a.) On April 7, 2017, Appellees issued responses to the Emergency Orders. (*Id.* at 0047a-0049a, 0051a-0053a.)

On June 2, 2017, Department issued a Civil Penalty Order assessing a total penalty of $1,471,675 against Appellees for violating Department Rules and Regulations. (*Id.* at 0083a-0086a.) Pursuant to Department Rules and Regulations, parties seeking to appeal[4] a Civil Penalty Order, and who wish to receive a hearing on the merits of the violations and the penalty, are required either to prepay in full the attached penalty or demonstrate a financial inability to prepay at a hearing before an Administrative Hearing Officer. (Department Rules and Regulations, Article XXI, Section 2109.06.)[5] Appellees subsequently filed an appeal of the Civil Penalty

---

[3] The March 6, 2017 Emergency Order regarding Building #501 was directed to Churchill Borough. (R.R. at 0015a.)

[4] Although Department Rules and Regulations refer to a challenge of a penalty assessed as an "appeal," the hearing on the merits of the penalty would be the initial hearing.

[5] Section 2109.06(a)(2) of Article XXI states:

In accordance with §§9.1. and 12.g. of the Air Pollution Control Act [, Act of January 8, 1960, P.L. 2119, *as amended*, 35 P.S. §§ 4009.1, 4012.g, Section 9.1 was added by Section 9 of the Act of October 26, 1972, P.L. 989], when the Department proposes to assess a civil penalty, it shall inform the person of the proposed amount of the penalty. The person charged with the penalty shall then have 30 days to pay the proposed penalty in full, or if the person wishes to contest the amount of the penalty or the fact of the violation to the extent not already established, the person shall forward the proposed amount of the penalty to the

Order asserting a financial inability to prepay the penalty and challenging the merits of the violations. (R.R. at 0088a-0090a.)

On August 7 and 29, 2017, the Hearing Officer held hearings on Appellees' alleged financial inability to prepay. (*Id.* at 0092a, 0716a.) Appellees provided documentary evidence as to their finances, including financial statements and tax returns. They also presented Ramesh Jain's and Vikas Jain's testimonies and that of their Certified Public Accountant that they did not have sufficient liquid assets or cash to prepay the penalty. (Trial Ct. Op. at 2.) Ramesh Jain testified that many of their assets and funds are tied to their properties, and Vikas Jain testified that there were insufficient liquid assets to cover a bond or provide the prepayment. (R.R. at 0134a, 0141a-42a, 0147a, 0229a.) Additionally, Ramesh Jain testified that the

---

Department within the 30[-]day period for placement in an escrow account with the County treasurer or any Commonwealth bank or post an appeal bond to the Department within 30 days in the amount of the proposed penalty, provided that such bond is executed by a surety licensed to do business in the Commonwealth and is satisfactory to the Department.

Section 2109.06(a)(3) of Article XXI states:

If, through administrative or final judicial review of the proposed penalty, it is determined that no violation occurred or that the amount of the penalty shall be reduced, the Department shall, within 30 days, in accordance with §§9.1. and 12.g. of the Air Pollution Control Act, remit the appropriate amount to the person with any interest accumulated by the escrow deposit. Failure to forward the money or the appeal bond at the time of the appeal shall result in a waiver of all legal rights to contest the violation or the amount of the civil penalty unless the appellant alleged financial inability to prepay the penalty or to post the appeal bond. If alleged, the Department shall conduct a hearing to consider the appellant's alleged inability to pay within 30 days of the date of the appeal. The Department may waive the requirement to prepay the civil penalty or to post an appeal bond if the appellant demonstrates and the Department finds that the appellant is financially unable to pay. The Department shall issue an order within 30 days of the date of the hearing to consider the appellant's alleged inability to pay.

4

Appellees were unable to obtain a bond to satisfy the prepayment amount. (*Id.* at 0147a-49a.)

Department presented evidence challenging Appellees' asserted inability to prepay. This evidence included that Appellees received a $5.9 million loan and that they applied for two grants in 2016 and 2017 from the Commonwealth Redevelopment Assistance Capital Program (RACP). (*Id.* at 0096a, 0209a-13a, 0863a-0935a.)

Department also presented the testimony of the Enforcement Chief of its Air Quality Program, Dean DeLuca (DeLuca), who the Hearing Officer accepted as an expert, over Appellees' objection, in the use of the INDIPAY model to determine a party's ability to prepay a penalty. (*Id.* at 0884a.) DeLuca testified regarding his half-day training in the use of the INDIPAY model, and that it is also used by the federal Environmental Protection Agency (EPA) for the same purpose. (*Id.* at 0866a, 0874a.) DeLuca explained that the INDIPAY model determines whether a party has the ability to prepay a penalty, although he could not explain exactly how the model made its calculations. (*Id.* at 0867a, 0875a-76a.) DeLuca noted that INDIPAY uses two separate tests to determine whether a party has the ability to prepay and that the model takes the lower of the two results and, therefore, is relatively conservative in its results. (*Id.* at 0878a.) The first test, test A, focuses on cash flow. (*Id.* at 0902a.) The second test, test B, relies on debt capacity. (*Id.*) DeLuca explained that INDIPAY does not account for assets on which a party could obtain a lien, but, instead, uses cash flow, income, tax returns, net worth, and a consideration of possible loans. (*Id.* at 0880a-81a, 0901a.) DeLuca testified the INDIPAY model results demonstrated that Appellees would **lack** $250,000 from the total needed to prepay the full penalty, but he concluded that Appellees could still

prepay because they had assets to make up that difference. (*Id.* at 0911a-12a.) DeLuca acknowledged that INDIPAY does not require that Appellees have the actual cash at the moment of calculation; instead, the model relies on five years of cash flow of the businesses that the individual operates. (*Id.* at 0930a.)

During DeLuca's testimony, Appellees' counsel objected to the use of the assessed values of Appellees' properties to calculate Appellees' ability to prepay because such assessments, obtained from county websites, were hearsay. (*Id.* at 0889a-96a.) Subsequent to the hearing, the Hearing Officer sustained Appellees' objection as to the county websites' assessed valuations of Appellees' properties as hearsay. (*Id.* at 1011a-12a.) However, the Hearing Officer did not find the INDIPAY results inadmissible because DeLuca testified that those assets, anything that was not cash flow, income, or information on tax returns, were not considered. (*Id.* at 0880a-81a, 0903a, 1013a.)

On December 20, 2017, the Hearing Officer issued a decision and order, in which he found that Appellees did not meet the burden of proving their inability to prepay the civil penalty. (*Id.* at 1030a.) Specifically, the Hearing Officer stated that Appellees' testimony "was largely self-serving and conclusory, and thus fell short of the standard of showing that paying the civil penalty would 'interfere with [their] ordinary and necessary expenses.'" (*Id.* (quoting *Hrivnak Motor Co. v. Dep't of Envtl. Prot.*, 299 EHB 437, 1999 WL 542409, *3 (Pa. Envtl. Hearing Bd. 1999))*.) The Hearing Officer further noted that Appellees' arguments regarding their inability to prepay were based upon their lack of liquid or cash assets, not income or assets that could be used to obtain funding for the prepayment. (*Id.* at 1023a.) The Hearing Officer rejected this argument, citing the standard set forth by the Environmental Hearing Board (EHB) in *Hrivnak*, in which the EHB held that, for a

petitioner to prove an inability to prepay a penalty, the petitioner must provide proof of its assets and liabilities, among other things, to show that prepaying would interfere with the petitioner's ordinary and necessary expenses. (R.R. at 1023a.) He found that Ramesh Jain's and Vikas Jain's testimonies were unpersuasive and conclusory, thus failing to meet the standard of proof. (*Id*. at 1024a, 1027a, 1030a.) The Hearing Officer added that DeLuca's testimony regarding Appellees' ability to prepay as calculated by the INDIPAY model was credible and "attempts to discredit" DeLuca's "findings miss[ed] the mark." (*Id.* at 1030a.) Thus, the Hearing Officer concluded that Appellees failed to prove their inability to prepay and ordered them to prepay the civil penalty or post a bond for $1,471,675 within 30 days of the decision and order. (*Id.*)

Appellees filed a petition for review with the trial court on January 16, 2018, seeking review of the December 20, 2017 Order. On January 22, 2018, Department filed a Motion to Dismiss the appeal of the Civil Penalty Order because Appellees had not prepaid the penalty within 30 days. (*Id.* at 1032a-35a.) Appellees responded and, in the alternative, requested that a stay be granted because Appellees had filed a petition for review with the trial court. (*Id.* at 1040a-53a.) In an order on the motions dated February 13, 2018, the Hearing Officer denied Appellees' petition to stay and granted Department's Motion to Dismiss Appellees' appeal. (*Id*. at 1056a-57a.) Appellees timely filed a petition for review with the trial court seeking review of the February 13, 2018 Order. (Appellees' Brief (Br.) at 4-5, Ex. B.) The trial court consolidated the two petitions for review by an order dated May 16, 2018. (R.R. at 1060a.)

**B. Proceedings Before the Trial Court**

After filing their petitions for review of the Hearing Officer's orders, Appellees filed a "Motion to Set Aside Results of Hearing and to Supplement the Record on Appeal and Alternatively, to Supplement the Record on Appeal and to Permit Further Discovery" with the trial court. (R.R. at 1062a-73a.) Appellees' motion requested that the trial court hear this matter de novo as the administrative hearing record was incomplete. (*Id.* at 1072a-73a.) Appellees requested that the Hearing Officer's decision and orders be set aside due to bias and violations of their due process rights. (*Id.* at 1071a-72a.) Appellees attached to their motion evidence from Right-to-Know Law[6] requests they made to Department, which Appellees argued uncovered commingling of adjudicatory and prosecutorial functions resulting in a denial of due process. (*Id.* at 1068a-72a.) The trial court never officially admitted those materials as part of the record. Department subsequently filed its own "Motion to Supplement the Record on Appeal" to rebut Appellees' assertions as to the Hearing Officer's impropriety and due process claims. (*Id.* at 1207a-14a.) The documents attached to, and referenced within, Department's motion were admitted into the record by order of the trial court. (*Id.* at 1240a.)

Department and Appellees thereafter submitted briefs to the trial court in support of their positions on Appellees' inability to prepay the penalty assessed by Department. (*Id.* at 1244a-1349a.) On December 13, 2018, the trial court heard oral argument on the issue. (*Id.* at 1352a.) Appellees generally argued that they were denied due process because they received no hearing or trial on the merits, that they could not prepay the penalty, that the Hearing Officer used the wrong standard, and that Department failed to rebut that evidence. (*Id.* at 1358a-68a.) Department

---

[6] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

argued that the administrative hearing record was complete, and there was no need for the trial court to review the Hearing Officer's decision de novo. (*Id.* at 1372a-73a.) Department also pointed out that the purpose of the prepayment of the penalty was to prevent frivolous lawsuits and that this Court has previously held that requiring prepayments or bonds was constitutional and did not violate due process. (*Id.* at 1373a-76a.) Department referenced that, consistent with EHB decisions on this issue, the Hearing Officer relied on loans and applications for grants, as well as DeLuca's testimony regarding the INDIPAY model, as proof that Appellees possessed the money to prepay. (*Id.* at 1385a-89a.) Appellees responded that there should be no doubt that this was to be a de novo review. (*Id.* at 1405a.)

**C. Trial Court's Decision**

Following oral argument, the trial court issued the following Order:

1. The Hearing Officer's determination that [Appellees] had the ability to prepay the penalty was in error.

2. If the [Department] determines it will proceed with the penalty against [Appellees], [Appellees] may proceed to a hearing on the merits of their case before a Hearing Officer designated by the [Department].

3. The penalty imposed by the Hearing Officer is hereby vacated.

(*Id.* at 1413a.)

On March 28, 2019, the trial court issued its Opinion noting that when a trial court takes additional evidence on the merits, the court must decide the case de novo. (Trial Ct. Op. at 2 (citing *Mitchell v. Zoning Hearing Bd. of the Borough of Mount Penn*, 838 A.2d 819, 825 (Pa. Cmwlth. 2003)).) The trial court then made its own findings of fact and conclusions of law. It cited *Commonwealth v. Smetana*, 191

9

A.3d 867, 873 (Pa. Super. 2018), in which the Superior Court concluded that a defendant's ability to pay a fine was based on the financial ability of the defendant alone and he could not be held in contempt for failing to borrow from someone else. (Trial Ct. Op. at 2.) The trial court examined Appellees' evidence related to their liquid and cash assets to determine their ability to prepay the penalty. Restating the testimony and facts presented at the hearing, the trial court determined that Appellees met their burden to prove that they did not have the liquid and cash assets necessary to prepay, and Department failed to rebut that with its own evidence. (*Id.* at 2-3.) For these reasons, the trial court held that the Hearing Officer erred in finding that Appellees could prepay the $1,471,675. (*Id.* at 3.) The trial court concluded that the order to prepay "was arbitrary, an abuse of discretion, not supported by substantial evidence, and/or contrary to law." (*Id.*)

## II.  PARTIES' ARGUMENTS

Both Department and Appellees agree the trial court considered Appellees' appeal de novo pursuant to Section 754(a) of the Local Agency Law,[7] 2 Pa. C.S. § 754(a). However, Department argues de novo review was improper as the record before the Hearing Officer was complete, and the trial court should have applied the standard appellate review under Section 754(b) of the Local Agency Law, 2 Pa. C.S.

---

[7] Section 754(a) states:

(a) **Incomplete record.**--In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal de novo, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court.

2 Pa. C.S. § 754(a).

10

§ 754(b).[8] The parties do not dispute that additional evidence was presented to the trial court, but instead argue whether that evidence related to the merits of Appellees' appeal. Appellees argue that the additional evidence was related to their claims that their due process rights were violated in the proceedings before the Hearing Officer and the determination that they were able to prepay the penalty. Department maintains the new evidence was solely to rebut Appellees' assertions and misstatements and was not evidence that went to any central issue of Appellees' ability to prepay the penalty.

Department argues that the trial court erred in determining that the Hearing Officer's findings of fact and conclusions of law did not support the inability to pay determination. Department further asserts that the trial court ignored DeLuca's testimony and his assessments regarding INDIPAY, the RACP grants that Appellees applied for, the $5.9 million loan that was unaccounted for, and Appellees' $10 million net worth. Appellees respond that the trial court did not ignore Department's witnesses and evidence presented at the administrative hearing. They assert that DeLuca's testimony failed to explain what INDIPAY is and how the model

---

[8] Section 754(b) provides:

**(b) Complete record.**--In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals).

2 Pa. C.S. § 754(b).

calculated Appellees' ability to prepay. Appellees additionally argue that Department failed to offer substantial evidence to support Department's use of the INDIPAY model. Appellees claim DeLuca should not have been admitted as an expert and the Hearing Officer's reliance on DeLuca's testimony was an abuse of discretion. Appellees assert that Department's calculations as to the loans and grants were erroneous and should not have been considered.

Department asserts that the trial court erred in vacating the penalty imposed by the Hearing Officer, as Department, not the Hearing Officer, imposed the penalty. (Department's Br. at 35.) Department additionally argues that the trial court violated Section 753(a) of the Local Agency Law, 2 Pa. C.S. § 753(a),[9] when it addressed an issue not raised before the Hearing Officer, without due cause. (Department's Br. at 35-36.)

---

[9] Section 753(a) of the Local Agency Law provides as follows:

**(a) General rule.**--A party who proceeded before a local agency under the terms of a particular statute, home rule charter, or local ordinance or resolution shall not be precluded from questioning the validity of the statute, home rule charter or local ordinance or resolution in the appeal, but if a full and complete record of the proceedings before the agency was made such party may not raise upon appeal any other question not raised before the agency (notwithstanding the fact that the agency may not be competent to resolve such question) unless allowed by the court upon due cause shown.

2 Pa. C.S. § 753(a).

## III. ANALYSIS

### A. Whether the trial court erred in reviewing the appeal de novo.

The general rule under Section 754(a) of the Local Agency Law, 2 Pa. C.S. § 754(a), is that if a full and complete record is not made before an agency, a court may hear the appeal de novo or remand for further proceedings. Under the Local Agency Law, the question of what standard to apply depends on whether the "record before the local agency is full and complete." *Powell v. Middletown Twp. Bd. of Supervisors*, 782 A.2d 617, 621 (Pa. Cmwlth. 2001). A record "is full and complete if there is a complete and accurate record of the testimony taken so that the appellant is given a basis for the appeal and if the court is given a sufficient record upon which to rule on questions presented." *Id.* The key determination is "whether the trial court accepted additional evidence." *Bolus v. City of Scranton Dep't of Licensing, Inspections and Permits* (Pa. Cmwlth., No. 202 C.D. 2018, filed May 2, 2019), slip op. at 14.[10]

Based on the language of the trial court's Opinion, it is not entirely clear whether the trial court reviewed the appeal de novo. The trial court stated that, if a court takes additional evidence on the merits, it must review a case de novo, citing *Mitchell*, 838 A.2d at 825 (holding that under Section 1005-A of the Pennsylvania Municipalities Planning Code (MPC),[11] "[w]here the trial court took any additional evidence on the merits . . . it must determine the case de novo, making its own findings of fact based on the record made before the board as supplemented by the additional evidence"). The trial court does not state that it reviewed the appeal de

---

[10] While not binding precedent, unreported opinions of this Court may be cited for their persuasive authority under Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[11] Act of July 31, 1968, P.L. 805, *as amended,* added by Section 101 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11005-A.

novo, although the Opinion contains findings of fact and conclusions of law, and it also states that it reviewed "all of the evidence in the record and the testimony." (Trial Ct. Op. at 2.) Moreover, although apparently accepting evidence into the record related to Appellees' due process claims, the trial court did not specifically recount any of this new evidence in its Opinion or make a finding based upon it.[12] (R.R. at 1206a-31a, 1240a.) Instead, the trial court used language suggesting it was reviewing the Hearing Officer's decision and, ultimately, held that this decision "was arbitrary, an abuse of discretion, not supported by substantial evidence, and/or contrary to law." (Trial Ct. Op. at 3.)

Because no new evidence was accepted regarding Appellees' ability to prepay, the administrative record was complete with regard to that issue, and therefore, de novo review of that determination would not be appropriate.[13] To the extent the trial court may appear to have engaged in de novo review, this was

---

[12] In this case, the trial court accepted Department's documents attached to its Motion to Supplement the Record and materials referenced within that motion as evidence to rebut Appellees' (then appellants') assertions on appeal to the trial court. (R.R. at 1214a.) In their appeal to the trial court, Appellees asserted a variety of constitutional claims, maintaining that their due process rights were violated and that the penalty was an excessive fine. One of those claims related to alleged impropriety by the Hearing Officer and impermissible commingling of prosecutorial and adjudicatory roles within Department, resulting in a denial of due process. (*Id.* at 1071a (citing *Lyness v. State Bd. of Med.*, 605 A.2d 1204 (Pa. 1992); *Pittsburgh Bd. of Pub. Educ. v. MJN,* 524 A.2d 1385 (Pa. Cmwlth. 1987)).) In support of these claims, Appellees attached evidence to their Motion to Supplement the Record, but the trial court never issued an order granting this motion. (*Id.* at 1063a, 1076a-165a.) In addition to Appellees' Motion to Supplement the Record and due process claims, Department also filed a Motion to Supplement with attached exhibits that were "made relevant by Appell[ees'] assertions." (*Id.* at 1209a-29a.) Department's attached exhibits and those referenced in its Motion to Supplement became a part of the record by order of the trial court. (*Id.* at 1240a.)

[13] "[O]ur standard of review is limited to a determination of whether the trial court abused its discretion, committed an error of law, or whether its decision is supported by substantial evidence." *Penn's Grant Assocs. v. Northampton Cty. Bd. of Assessment Appeals*, 733 A.2d 23, 26 n.4 (Pa. Cmwlth. 1999).

harmless because the trial court also reviewed the Hearing Officer's decision when it found that the Hearing Officer used an incorrect legal standard and that Department failed to rebut Appellees' evidence with substantial evidence. Therefore, we will not find that the trial court erred.

### B. Whether Appellees had the ability to prepay.

In order to receive a hearing to challenge the Civil Penalty Order issued by Department, Appellees had to either prepay the penalty, or demonstrate their financial inability to do so pursuant to Department Rules and Regulations, which provide:

> Failure to forward the money or the appeal bond at the time of the appeal shall result in a waiver of all legal rights to contest the violation or the amount of the civil penalty **unless the appellant alleged financial inability to prepay the penalty or to post the appeal bond. If alleged, the Department shall conduct a hearing to consider the appellant's alleged inability to pay within 30 days of the date of the appeal. The Department may waive the requirement to prepay the civil penalty or to post an appeal bond if the appellant demonstrates and the Department finds that the appellant is financially unable to pay.** The Department shall issue an order within 30 days of the date of the hearing to consider the appellant's alleged inability to pay.

(Department Rules and Regulations, Article XXI, Section 2109.06(a)(3) (emphasis added).)

This Court has upheld prepayment of civil penalties as a reasonable condition to appeal because "[t]he bond requirement ensures the underlying validity of appeals and serves to protect the public interest in a safe and clean environment." *Boyle Land & Fuel Co. v. Envtl. Hearing Bd.*, 475 A.2d 928, 930 (Pa. Cmwlth. 1984). However, the Court has also been mindful of a party's due process rights. The Court

15

has cautioned that, because the prepayment requirement could result in a party being **denied access** to the courts, as guaranteed by article V, section 9 of the Pennsylvania Constitution, PA. CONST. art. V, § 9, and access to due process of law, due to the party's alleged impecunity, "[t]here is ample reason . . . to tread carefully." *Twelve Vein Coal Co. v. Dep't of Envtl. Res.*, 561 A.2d 1317, 1319 (Pa. Cmwlth. 1989). Thus, we have previously instructed that when a party asserts an inability to prepay or produce a bond that is required for the party to obtain an initial hearing on the merits, a hearing should be held to determine whether the party is unable to produce the funds to pay. *Pilawa v. Dep't of Envtl. Prot.*, 698 A.2d 141, 143 (Pa. Cmwlth. 1997) (citing *Twelve Vein*, 561 A.2d at 1319). At issue here is whether Appellees have the financial ability to prepay a penalty of $1,471,675 before they can receive a hearing on the merits of the alleged violations and imposition of the penalty.

Before turning to whether Appellees have an ability to prepay the penalty, an understanding of the respective burdens of proof and relevant factors to consider would be instructive. While this Court has not set a defined list of factors or standards of proof that must be met to establish an inability to pay, we find guidance in EHB decisions that involve similar prepayment requirements. For instance, in *Hrivnak*, the EHB stated that a party that seeks to avoid the prepayment or bond requirement possesses the burden of proof because it "ha[s] vastly superior access to information concerning its own financial condition than [] Department will have." 1999 WL 542409, at *3. The EHB further stated that a party can meet its burden by presenting "hard evidence" that prepayment "would interfere with the appellant's ordinary and necessary expenses, considering an appellant's current and reasonably anticipated future needs." *Id*. This evidence should relate to an appellant's assets and liabilities, and could include information as to the appellant's property,

16

insurance policies, vehicles, and securities. *Id.*; *see also Goetz d/b/a Goetz Demolition v. Dep't of Envtl. Prot.*, 1998 EHB 955, 1998 WL 682990 (Pa. Envtl. Hearing Bd. 1998). In *Goetz*, the administrative law judge listed 11 factors beyond financial statements and income tax returns as relevant evidence regarding an appellant's ability to prepay a penalty. They are:

> a. accounts held at financial institutions; b. accounts and notes receivable; c. marketable securities owned by appellant; d. interests appellant owns in closely held corporations or partnerships; e. intangible property owned by appellant; f. vehicles owned by appellant; g. real estate owned by appellant; h. oil, gas, or mineral rights owned by appellant; i. recent loan applications filed by appellant; j. insurance policies naming appellant as the insured or beneficiary; and, k. property appellant recently sold for value or transferred as a gift.

*Goetz*, 1998 WL 682990, at *7 n.9. Once the party charged with the violation meets this initial burden of establishing a prima facie inability to pay, the burden then shifts to the issuer of the penalty, here, Department, to rebut this evidence.

However, heeding this Court's warning in *Twelve Vein* "to tread carefully," 561 A.2d at 1319, the EHB in *Hrivnak* also explained that, in determining whether an appellant has the financial ability to prepay, "the appellant must either have **available or obtainable liquid assets, or assets that can be converted into cash or used as collateral to obtain cash, relatively quickly**." 1999 WL 542409, at *4 (emphasis added). It cautioned that requiring the prepayment should not interfere with a functioning business, and there should be a consideration as to whether prepayment will create a financial hardship and impact a productive component of society. *Id.* at *3. To do otherwise, the EHB held, again citing *Twelve Vein*, could result in the deprivation of due process and the denial of an appellant's access to review of the claims against the appellant based solely on the appellant's impecunity.

17

*Id.* at *2. Those important **constitutional concerns**, the EHB explained, must be **balanced** with the purposes of the prepayment requirement, which is to avoid frivolous appeals, aid in prosecutorial efficiency, and reduce potential problems in collecting a penalty following a merits determination. *Id.* This is why there must be a fair hearing that utilizes a standard based on an appellant's access to available or quickly obtainable liquid assets, given the 30-day period in which a penalty must be prepaid. *Id.* at *3-4. In short, "[i]n the final analysis, th[ose constitutional] fundamental rights cannot be sacrificed to the otherwise noble goals underpinning the prepayment requirement." *Id.* at *2. With these principles in mind, we turn to the facts of this case.

Department argues that Appellees must demonstrate by hard evidence of their assets and liabilities that they do not have any means available to prepay the penalty that would not cause undue hardship, and that they failed to do so. (Department Br. at 23-25, 33-34 (citing *Carl L. Kresge & Sons, Inc. v. Dep't of Envtl. Prot.*, No. 99-149-K, 2001 WL 568484 at *3 (Pa. Envtl. Hearing Bd. 2001); *Hrivnak*, 1999 WL 542409, at *3).) According to Department, the Hearing Officer found its witnesses credibly showed that Appellees have the financial ability to prepay the fine. Specifically, Department highlights its expert's testimony describing his use of the INDIPAY model, as evidence of Appellees' ability to prepay.

Appellees argue that the trial court was correct that only liquid assets should be considered and that it would be unreasonable and burdensome to expect Appellees to prepay the nearly $1.5 million penalty, the largest in Department's history, by obtaining a loan within 30 days or less based on the financial evidence provided in the record. (Appellees' Br. at 14-16.) Moreover, they argue that: the Hearing Officer erred in finding DeLuca to be an expert in the use of INDIPAY; the

INDIPAY model was unclear and DeLuca could not explain how the software works to provide a final assessment; and there was not substantial evidence to support that Appellees have an ability to prepay. (*Id*. at 12-16.)

In applying the standard from *Hrivnak* and considering the factors from *Goetz*, the trial court held that Appellees satisfied their prima facie burden of demonstrating an inability to pay and Department failed to rebut Appellees' evidence. We agree. In addition to the testimony of the Jains and their accountant as to Appellees' financial inability to prepay within the time allotted, Appellees offered documents, such as tax returns and financial information, that demonstrated their finances were tied to their properties and that they would be unable to convert those finances relatively quickly. Therefore, we agree that Appellees presented "hard evidence" that met their prima facie burden to demonstrate an inability to prepay. *Hrivnak*, 1999 WL 542409, at *3.

The burden then shifted to Department to come forward with rebuttal evidence of Appellees' ability to prepay. The Department presented the testimony of DeLuca, who testified on Department's utilization of the INDIPAY model, which is also used by the EPA, to determine whether Appellees had the financial ability to prepay the penalty. However, DeLuca's testimony concerning INDIPAY was not sufficient for two reasons. First, DeLuca had a half-day training on the INDIPAY model and could not explain how the model reached its calculations. (R.R. at 0874a-76a.) Therefore, he was not qualified to serve as an expert and his opinion lacked a foundation.

Second, while apparently accepting the use of the INDIPAY model as an appropriate measure of ability to pay, the model's conclusion that Appellees would **not** be able to prepay the entire penalty was not accepted. Importantly, DeLuca

19

testified that the INDIPAY model showed Appellees would **still lack $250,000 of the funds** necessary to prepay the penalty (*id.* at 0911a); thus, the result of employing the INDIPAY model was that Appellees **did not** have the financial ability to prepay the penalty. Nonetheless, DeLuca testified that, in his opinion, Appellees could make up the difference between what the INDIPAY model showed and the amount needed with additional assets, not considered in the INDIPAY model. (*Id.* at 0911a-12a.) This approach is flawed because DeLuca only explained that he considered Appellees' assets and net worth in total; he did not calculate whether any of these assets or funds were readily available to be used for prepayment.

Department argues that the record clearly indicates that Appellees had ample funds and assets in 2016 and 2017 to apply for two RACP grants which, it asserts, would require Appellees to have had $1.25 million and $2.5 million available, respectively, to qualify for the grants. (R.R. at 0702a-03a; Department's Br. at 27-28.) While Department and the Hearing Officer relied on this fact, the amount required to apply for those RACP grants does not need to be solely cash or secured funding. According to Section 302 of the Capital Facilities Debt Enabling Act,[14] an applicant may count "land and fixed assets which have a substantial useful life and are directly related to the project." 72 P.S. § 3919.302. There is no evidence of how many of these assets or funds were readily available to be used to prepay a penalty.[15] Department further states that Appellees had received a $5.9 million loan, which it argues supported the Hearing Officer's decision that Appellees could prepay, surmising that they could use the loan proceeds to prepay the penalty. (Department's

---

[14] Act of February 9, 1999, P.L. 1, *as amended*, 72 P.S. § 3919.302.

[15] In addition, the Hearing Officer excluded the assessed values of the properties as hearsay, (R.R. at 1011a-12a), thus, the value of those properties could not be used in determining whether Appellees could prepay the penalty.

20

Br. at 28-32.) Department notes that Appellees did not explain or offer any explanation for the unaccounted funds of the loan. (*Id.* at 30.) However, that loan was obtained for residential properties in Mississippi, those residential properties are unrelated to the property upon which Department's penalty is based, and the loan documents appear to restrict the use of the funds to those Mississippi properties. (R.R. at 0551a.) Therefore, it is unclear that the proceeds can be used to prepay this penalty. A court must consider whether an individual possesses available or obtainable liquid assets, or any assets that can be converted into cash or used as collateral to obtain the cash required, relatively quickly. *See Hrivnak,* 1999 WL 542409, at *4. In this case, there is no substantial evidence that Appellees' loans or residential properties are able to be used to obtain cash in the timeframe required.

In light of these considerations, the trial court, applying the correct legal standard, and properly within the appellate scope of review, held that Appellees met their burden of financial inability to prepay the penalty and that Department did not rebut with substantial evidence. In reviewing the record, Department failed to present competent evidence to demonstrate how the INDIPAY model, its main calculation method to rebut Appellees' prima facie case, worked and, since that model did not show Appellees had the ability to prepay, failed to provide other evidence that Appellees had additional assets or funds not considered by the INDIPAY model that would be readily available. Accordingly, the trial court's Order is affirmed.

Because we are affirming the trial court's Order, we need not reach the constitutional arguments presented by Appellees. However, we recognize Appellees' constitutional due process concerns as to the application of the prepayment requirements in this case. The ability to challenge the finding of a

21

violation of law and imposition of a penalty in the first instance, is a right guaranteed by the United States and Pennsylvania Constitutions, and, therefore, we must scrutinize the hurdles placed upon parties, such as Appellees in this case, to that access carefully. *See Twelve Vein*, 561 A.2d at 1319; *Boyle*, 475 A.2d at 930. Accordingly, while on its face a requirement to prepay a penalty or supply a bond is constitutional as established by this Court's precedent, a critical consideration is whether the individual is able to prepay without undue financial hardship.[16]

---

[16] This Court has held that prepayment conditions for appeals are constitutional. *Boyle*, 475 A.2d at 930-31. Subsequent to *Boyle*, this Court addressed the prepayment issue again in *Twelve Vein*, 561 A.2d at 1317-18. In *Twelve Vein*, this Court had to consider a similar assertion as the one made in this appeal, that the alleged violator asserted a financial inability to pay the penalty. *Id.* at 1318. This Court noted that it had "a more serious issue [than in *Boyle*, where the party stipulated it had the ability to prepay]; a petitioner who, because of alleged impecunity, may be denied access to our courts and due process of law." *Twelve Vein*, 561 A.2d at 1319. However, *Twelve Vein* never resolved the constitutional question of a prepayment requirement where there was an assertion of inability because the matter was remanded due to a nonexistent record on the petitioner's ability to prepay. *Id.*

**C. Whether the trial court erred in vacating the penalty.**

In its Order, the trial court stated "[t]he penalty imposed by the Hearing Officer is hereby vacated." (*Id.* at 1413a.) The Hearing Officer had ordered Appellees "to pay the civil penalty of $1,471,675 or post a bond for $1,471,675 within thirty days of this Order." (*Id.* at 1030a.) We read the trial court's Order as simply allowing Appellees to proceed to a hearing on the merits of the Civil Penalty Order without prepayment of the penalty.

## IV.    CONCLUSION

The merits of the Civil Penalty Order, which includes the violation alleged, and the penalty imposed, are not before this Court. We are not condoning the alleged actions that underlie the penalty in this case, which we recognize are very serious. Instead, we must examine whether individuals **accused** of violating the law can receive a hearing at which the merits of the accusations can be proven, and any defenses presented, **before** the individuals are adjudged guilty and liable. Because the accused individuals here are **required** to prepay the penalty before they can even receive such a hearing, the Court must assure that there is an ability to make such a prepayment. The trial court correctly found, in this case, that Department did not show that Appellees had the ability to prepay this penalty, the largest ever imposed by Department. Accordingly, we affirm the trial court's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

23

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Churchill Community Development,    :
LP, Paradigm Consultants, LLC,    :
Ramesh Jain and Vikas Jain    :
    :
    v.    :   No. 208 C.D. 2019
    :
Allegheny County Health Department,    :
    Appellant    :

# O R D E R

**NOW**, December 27, 2019, the Order of the Court of Common Pleas of Allegheny County is **AFFIRMED**. This matter shall proceed to a hearing before the Allegheny County Health Department on the alleged violations.

_____
**RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Churchill Community Development,   :
LP, Paradigm Consultants, LLC,   :
Ramesh Jain and Vikas Jain   :
  :
      v.   :   No. 208 C.D. 2019
  :   ARGUED: October 3, 2019
Allegheny County Health Department,   :
        Appellant   :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge


CONCURRING AND DISSENTING OPINION
BY JUDGE CEISLER            FILED: December 27, 2019

I concur in the majority opinion's conclusion that the Court of Common Pleas of Allegheny County (trial court) erred to the extent it reviewed the hearing officer's decision *de novo*. I also concur in the majority's determination that the trial court's vacatur of the civil penalty imposed against Churchill Community Development, LP, Paradigm Consultants, LLC, Ramesh Jain, and Vikas Jain (collectively, Appellees) did not eliminate the ability of Allegheny County Health Department (Department) to impose the penalty; rather, if upheld, it would merely entitle Appellees to a hearing on the merits of the penalty without the need for prepayment.

However, I disagree with the majority's conclusion that Appellees are entitled to such a hearing under the circumstances of this case. Therefore, with respect for the majority's carefully reasoned opinion, I dissent on that issue for the following reasons.

**Background**

Relevant here, Appellees are engaged in a major commercial renovation and redevelopment project in Allegheny County. The Department obtained information indicating Appellees were removing massive amounts of asbestos from a large building during the renovation, without the required permits and safety procedures to protect workers, the public, and the environment. The Department states that when it began to investigate the extent of the potential violation, Appellees ignored the Department's preservation orders, refused to stop removal efforts after being directed to do so, and actively destroyed evidence of prior removal. As a result, the Department issued an enforcement order imposing a total fine of nearly $1.5 million, the largest it has ever imposed.[1] Appellees filed an appeal of the penalty with the Department.

The Department's applicable regulations require prepayment of the fine by cash or acceptable bond before a hearing will be allowed on the merits of the penalty, unless Appellees can demonstrate its inability to prepay the penalty. Accordingly, a Department hearing officer held an extensive prepayment hearing over two days. The hearing officer then issued a lengthy and detailed decision concluding Appellees failed to prove they lacked the ability to prepay the fine. The hearing officer therefore ordered Appellees to prepay the fine within 30 days of the decision.

Appellees did not prepay the penalty within the 30-day period. Thereafter, the Department filed a motion to dismiss Appellees' appeal of the penalty. The hearing officer dismissed Appellees' appeal of the penalty. The Department then

---

[1] Art. XXI, Part I – Enforcement, § 2109.06(a)(1) of the Department's Rules and Regulations, Allegheny County Ordinance No. 16782, authorizes monetary penalties of up to $25,000 per day for air pollution control violations, which may be imposed even if a violation is not willful.

entered the penalty in the judgment index of the trial court as a lien against Appellees.

Appellees appealed the hearing officer's decision in the trial court. Without taking additional evidence on the prepayment issue, the trial court found the hearing officer erred and Appellees were entitled to a hearing on the merits of the penalty without prepayment. This appeal by the Department followed.

## Burden of Proof

The majority concludes the Department failed to demonstrate Appellees' ability to prepay the penalty in order to obtain a hearing on the merits of the fine. That conclusion rests largely on the majority's determination that the Department bore the burden of proving Appellees' ability to prepay the fine. I respectfully disagree with the majority's allocation of the burden of proof.

The present Regulations allocate the burden of proof to the Department when it issues an order or assesses a penalty. Regulations, Art. XI – Hearings and Appeals, § 1105(C)(7)(a). Appellees apparently concede that the prior version of the Regulations, which was in effect at the time of the hearing officer's decision, imposed the initial burden of proof on Appellees as the parties appealing the enforcement order. Appellees nonetheless argue that the trial court's *de novo* review triggered application of the new version of the Regulations. However, as the majority correctly found, *de novo* review was not appropriate in this case. Therefore, Appellees' argument for application of the current version of the Regulations must fail. Appellees, not the Department, had the initial burden of proof.

More importantly, Appellees' argument ignores § 1105(C)(7) of the Regulations, which provides, in pertinent part:

> In cases where a party has the burden of proof to establish the party's case by a preponderance of the evidence, the Hearing Officer may

> nonetheless require the other party to assume the burden of proceeding with the evidence in whole or in part if that party is in possession of facts or should have knowledge of facts relevant to the issue.

Regulations, Art. XI – Hearings and Appeals, § 1105(C)(7). Appellees were the parties in possession of knowledge concerning their own financial status and ability to prepay the penalty or post a bond. Therefore, regardless of the other provisions of the Regulations concerning burdens of proof, the hearing officer properly allocated the ultimate burden of proof to Appellees on the question of their ability to prepay the penalty or post a bond. *Accord Goetz d/b/a Goetz Demolition v. Dep't of Envtl. Prot.*, 1998 EHB 955, 967-68, 1998 WL 682990, at * n.6 (Pa. Envtl. Hr'g Bd. 1998) ("courts frequently assign the burden of proof to a party with peculiar access to certain information, even if he would not ordinarily bear the burden of proof") (citing Leonard Packel and Anne Bowen Poulin, *Pennsylvania Evidence* § 301.1 (1987)).

Accordingly, I respectfully disagree with the majority's conclusion that the Department failed to sustain its burden of proof on the prepayment issue. *Appellees* had the burden of proof concerning their alleged inability to prepay the penalty or post a bond. The hearing officer found, based on its weighing of the evidence and its credibility findings, that Appellees failed to sustain that burden.

### Trial Court's Findings of Fact

As the majority correctly finds, the trial court was not entitled to review this matter *de novo*. Therefore, both the trial court and this Court are bound by the credibility determinations of the hearing officer, who was the finder of fact and who, unlike the courts, had the ability to view and evaluate the witnesses' demeanor as well as to weigh conflicting evidence. *See In re Thompson*, 896 A.2d 659 (Pa.

Cmwlth. 2006). Here, I must conclude, respectfully, that the majority's decision is based on an impermissible reweighing of the evidence.

The hearing officer found Appellees failed to offer sufficient evidence to prove their inability either to prepay the penalty imposed by the Department or to post a bond. The hearing officer, who had the opportunity to observe Appellees' witnesses and to assess their demeanor as well as their testimony, expressly found them not credible and their testimony largely conclusory. *See* Reproduced Record at 1024a-27a. Further, the hearing officer found Appellees' business expert was not persuasive because he performed no analysis of Appellees' ability to prepay the penalty. *Id.* at 1029a-30a.

The majority is unpersuaded by the methodology and software utilized by the Department's expert witness. However, the hearing officer found him credible.[2] Thus, the majority's reliance on its rejection of the Department's expert testimony is misplaced.

The hearing officer's opinion listed a number of assets held by Appellees, along with the supporting documentary evidence. *See id.* at 1017a-19a. That evidence included information typically considered in determining financial ability to prepay a penalty. *See id.* at 1022a-23a (citing *Carl L. Kresge & Sons, Inc. v. Dep't of Envtl. Prot.*, 2001 WL 568484, at *3 (Pa. Envtl. Hr'g Bd. 2001); *Goetz*, 1998 WL 682990, at *7 n.9). Notably, the hearing officer considered that evidence separately from the testimony of the Department's expert.

The majority suggests the evidence should have been analyzed differently concerning what assets Appellees could use to prepay the penalty. However, the

_____

[2] Notably, as the hearing officer observed, the INDIPAY software program used by the Department's expert is used by the United States Environmental Protection Agency. Reproduced Record at 1028a.

hearing officer rejected Appellees' evidence as *not credible*. The hearing officer concluded that in the face of substantial documentary evidence in the record concerning large amounts of assets apparently at hand, Appellees offered self-serving denials of their ability to pay, along with expert testimony that offered no analysis on that issue. Accordingly, the hearing officer permissibly concluded Appellees failed to meet their burden of proving their inability to prepay the penalty or post a bond. It is not the place of either the trial court or this Court to reweigh the evidence. *Thompson*.

For all of the above reasons, I respectfully dissent from the portion of the majority's decision finding that Appellees demonstrated inability to prepay the Department's penalty or post a bond.

_____
ELLEN CEISLER, Judge